# EXHIBIT 3

# Exhibit 1

CONFIDENTIAL AGREEMENT FOR ALTERNATIVE DISPUTE RESOLUTION
OF MTBE CLAIMS

This Agreement as of November 8, 2011 is entered into between Resolute Management Ltd. ("Resolute") acting as the agent for HDI-Gerling Industrie Versicherung AG, formerly known as Gerling Konzern Allgemeine Versicherungs – AG and Gerling-Konzern General Insurance Company ("Gerling") and ConocoPhillips Company ("COP") as the successor to Tosco Corporation ("Tosco"). Resolute, Gerling and COP shall be referred to collectively in this Agreement as "the Parties."

## RECITALS

1. Tosco purchased excess insurance for the policy year August 1, 1998 to July 31, 1999 under a policy of insurance issued by Gerling, Policy No. 509/DL253098 (hereinafter the "Policy").

2. In accordance with its terms and conditions, the Policy provides excess coverage over certain attachment points described in Item 2a of the Declarations of the Policy.

3. The Parties agree that Exhibit A is a true and correct copy of the Policy and all endorsements to the Policy.

4. Tosco provided Gerling with timely notice of certain lawsuits alleging product liability claims arising from the manufacture and sale of gasoline with the additive methyl tertiary butyl ether ("MTBE") (hereinafter the "MTBE Lawsuits"). Tosco elected that the MTBE Lawsuits "be treated as one occurrence per the terms and conditions of the above-referenced policy, specifically Definition (f): Occurrence Integration, and Condition (d): Notice of Occurrence." Gerling acknowledged notice of an integrated occurrence but reserved its rights with respect to whether any and all of the individual claims qualify as a single integrated occurrence.

5. A dispute has arisen between the parties concerning coverage under the Policy for claims asserted against COP in relation to Tosco in the MTBE Lawsuits (hereinafter "the Controversy").

6. The Policy provides in section V(o) that disputes arising under the Policy shall be finally and fully determined in London, England under the provision of the English Arbitration Act of 1950, as amended and supplemented, by a Board composed of three arbitrators.

7. The Parties desire to resolve the Controversy in an efficient and expeditious manner in a more convenient forum with the goal of resolving the dispute within one (1) year from the date of the Procedural Hearing held by the Panel with the Parties. The parties further agree to define the issues in the Controversy pursuant to the terms of this Agreement and the process by which the Controversy will be resolved. As such, Resolute and COP agree to alter and amend section V(o) of the Policy and to agree on an alternate dispute resolution framework to resolve the issues as defined in this Agreement. This Agreement

is intended to, and does, supersede the dispute resolution clause of the Policy, and to the extent there are any inconsistencies between the Agreement and the Policy, the terms of this Agreement shall control. It remains, however, the Parties' intent that the Controversy shall be finally and fully resolved by means of the procedure outlined in this Agreement, and that the decision shall be final and binding on the Parties.

8.  This Agreement shall apply solely to the present Controversy, and does not alter the Policy or any of its terms for purposes of any other dispute between the Parties under the Policy that may develop in the future.

9.  For purposes of this Agreement, it is acknowledged that the rights and obligations of Tosco under the Policy are solely owned and exercisable by COP, and that the rights and obligations of Gerling under the Policy are exercisable by Resolute. Any award by the arbitrators shall reflect the succession to the rights and obligations as set forth herein as part of the decision.

## AGREEMENT AS TO DISPUTE RESOLUTION

10. Procedural Rules and Selection of Arbitrators. Except as otherwise provided herein, the arbitration shall be conducted ad hoc in accordance with the UNCITRAL Arbitration Rules (as revised in 2010) without the supervision or oversight of an appointing authority. Notwithstanding the application of the UNCITRAL rules, Resolute and COP agree that the Controversy shall be determined by a panel composed of three neutral arbitrators (the "Panel"), to be selected as follows:

    a.  Resolute and COP will simultaneously nominate one neutral arbitrator each on November 15, 2011.

    b.  The third member of the Panel, who shall serve as the Chairman, shall be selected by agreement between Resolute and COP on or before December 1, 2011.

    c.  If the Parties are unable to reach agreement on a Chairman on or before December 1, 2011, they will each submit a list of five (5) candidates to one another on or before December 14, 2011. Each party will exercise three (3) peremptory strikes as to the other Party's list, leaving a pool of four (4) candidates comprised of two (2) candidates from the list of each Party. If either side is not willing to accept one (1) of the other side's candidates at that point, the party-appointed neutrals will select the Chairman from the remaining four (4) candidates. If the neutrals cannot agree on the selection of the Chairman, the neutrals shall rank each candidate and the candidate with the highest ranking shall be the Chairman.

    The Parties expressly agree that the arbitrator compensation provisions of the UNCITRAL Rules do not apply here, and the Parties will independently agree to compensation arrangements with the Panel as it is constituted.

11. <u>Terms of Reference and Schedule</u>. Notwithstanding the application of the UNCITRAL Rules, the Parties agree to the following. The Parties shall jointly prepare Terms of Reference outlining the issues for the Panel along with a proposed schedule for the proceedings. In addition to outlining the issues for the Panel in the Terms of Reference, the Parties shall prepare a schedule with the following sequence of key events: exchange of pleadings; Procedural Hearing; exchange of disclosure requests; responses to same; COP's submission of witness statements and documentary evidence; Resolute's submission of witness statements and documentary evidence; COP's Reply with rebuttal evidence and witness statements, if any; and Resolute's Rejoinder with rebuttal evidence and witness statements, if any; exchange of expert reports, and Final Hearing.

12. <u>Discovery</u>. The Panel shall permit and facilitate specific requests for documents, exhibits or other evidence, as requested by the Parties. However, there will be no pre-hearing depositions unless a Party demonstrates a necessary witness is not available to testify at the final hearing. In any event neither side shall be entitled to take more than two (2) depositions even if such a need is shown.

13. <u>Timing and Schedules</u>. The proceedings shall be conducted in an expeditious manner, to the extent possible, with a view to having the Final Hearing within nine (9) months of the date of the Procedural Hearing and issuing a final decision and award within one (1) year from the date of the Procedural Hearing held by the Panel with the Parties. The Panel shall be authorized to impose time limits it considers reasonable on each phase of the proceedings, including, without limitation, the time allotted to each party for presentation of its case and for rebuttal. The Parties shall also be afforded the opportunity to present full Opening and Closing oral submissions at the Final Hearing in equally allotted times.

14. <u>Venue</u>. The seat and location for the arbitration shall be New York.

15. <u>Specific Issues to be Determined</u>. The substantive issues to be decided by the Panel are agreed to be the following:

   (a) Whether (and if so to what extent) the Ultimate Net Loss submitted by COP under the Policy (the "UNL"):

   (i) meets the definition of "Damages" in the Policy;

   (ii) arises out of property damage or personal injury that falls within the "Occurrence" definition in the Policy;

   (iii) relates to one occurrence per the terms and conditions of the Policy, specifically Definition (f) and Condition (d), as notified by Tosco;

   (iv) exceeds the per occurrence retention amounts stated in Endorsement 1 of the Policy; and

   (v) meets the requirements of "Loss Payable" under Condition V(g) under the

Policy.

(b) Whether (and if so to what extent) insurance afforded by the Policy is to be excess of "other insurance" as defined by the Policy;

(c) Whether Resolute/Gerling is entitled to rescind the Policy by reason of alleged material misrepresentations or omissions of material fact made by Tosco at the time of application for the Policy; and

(d) Whether (and if so to what extent) the UNL is excluded by (i) the Known Occurrence Exclusion Endorsement or (ii) the Blended Pollution Endorsement.

There are no other alleged impediments to coverage for these claims under the Policy. No other such issues will be submitted or decided by the Panel without the express written permission of the Parties. The issues stated herein shall be decided in accordance with the Governing Law and Interpretation clause of the Policy (section V(q)).

16. <u>Final Hearing</u>. Each party may only present witnesses who previously submitted witness statements, and cross examination of each party's witnesses is at the election of the other party unless such witness statement is withdrawn. Upon good cause shown by either Party, the Panel may allow for the submission of additional evidence at the Final Hearing such as reply testimony or testimony as to some new development as it decides in its discretion is appropriate.

17. <u>Decision and Award</u>. The decision of any two arbitrators as to a single issue shall be sufficient for a determination. The Panel shall issue a reasoned decision with findings of fact and conclusions of law within a reasonable time after the final hearing but no later than ninety (90) days from the date of the final hearing, except in extraordinary circumstances or with consent of the Parties. The Parties expressly agree that the decision and award shall be non-appealable, final and binding as to coverage for alleged MTBE liabilities of Tosco for all current claims which have been asserted absent fraud or manifest error. The Parties further agree that the rulings of the Panel shall be binding with respect to future MTBE claims however nothing in this paragraph shall relieve Tosco of its burden of showing that each MTBE claim fits within the integrated occurrence noticed by Tosco. If a dispute arises after any award issued by the Panel about any future MTBE claim, the Parties expressly agree that the Panel as a whole, or a member of the Panel with the express consent of both Parties, shall hear the dispute to determine how the Policy and Award apply to future MTBE claim(s) provided that all of the members are available and no conflict has arisen in the interim. The Parties also agree that any decision and award shall incorporate this Agreement into the decision. The Panel may award costs and interest, if applicable, to the prevailing party as it deems appropriate. A judgment upon such award may be entered in any New York state or federal court, and Resolute and Gerling expressly agree to submit to the jurisdiction of any such court for purposes of having the judgment based on such award enforced. Any monetary award issued by the Panel shall be payable in U.S. Dollars.

18. <u>Confidentiality</u>. This Agreement and the proceedings before the Panel, as well as the final decision and award, are and shall remain confidential; however, the Parties shall have the right to disclose this Agreement and/or the final decision and award to affiliates, successors, and assignees, and auditors, reinsurers or other governmental authorities to whom such disclosure is necessary or required.

19. <u>Governing Law for This Agreement</u>. The Parties agree that this Agreement itself shall be governed by, and all disputes arising under or in connection with this Agreement shall be governed in accordance with, the substantive law of New York, excluding its conflict of laws rules.

IN WITNESS THEREOF, the Parties have caused this Agreement to be executed as of the date first written above.

CONOCOPHILLIPS COMPANY, for itself and as successor to TOSCO CORPORATION

By: _____
       Clyde W. Lea

Title: Deputy General Counsel - Litigation & Arbitration

RESOLUTE MANAGEMENT LTD., as agent for GERLING

BY: _____

Title: Asst. General Counsel