# EXHIBIT 5

IN THE MATTER OF AN ARBITRATION BETWEEN:

CONNOCOPHILLIPS CO., SUCCESSOR IN INTEREST TO TOSCO CORP. (hereinafter "Tosco"), Petitioner,

and

HDI-GERLING INDUSTRIE VERSICHERUNG AG, FORMERLY KNOWN AS GERLING KONZERN ALLGEMEINE VESICHERUNGS -- AG (hereinafter "Gerling"), Respondent.

─────────────────────────────────────────

ORDER NO. 1: CONCERNING CROSS- MOTIONS TO COMPEL AND TOSCO MOTIONS FOR PARTIAL SUMMARY JUDGMENT

─────────────────────────────────────────

This arbitration was commenced by Tosco seeking a declaration that it is entitled to recover the full amount of excess coverage on Policy No. 509/DL253098, issued to cover catastrophic liability up to $50 million as part of $100 million in coverage through two umbrella policies, excess of a $100 million retention (of which Tosco was responsible for $2 million or more through self-insured retentions). Gerling's Reply advances several defenses to liability.

The Parties have agreed to arbitrate according to the UNCITRAL Rules, as amended 2010, and as modified by the Parties, and to have the arbitration administered by the ad hoc tribunal selected by the Parties with no administering agency.  The Parties have agreed that the Policy "shall be governed by and construed in accordance with the internal laws of the State of New York," with certain exceptions, but that the "provisions, stipulations, exclusions and conditions

of this Policy are to be construed in an evenhanded fashion as between the Insured and the Underwriters; without limitation, where the language of this Policy is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the provisions, stipulations, exclusions and conditions (without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the Insured or the Underwriters and without reference to parol evidence)." Art. V(q).

Tosco has sought indemnification from Gerling under the Policy for defense and settlement costs resulting from numerous "Underlying Claims" for injuries caused by Tosco's manufacture, distribution, and sale of gasoline treated with MTBE (the gasoline oxygenate, methyl tertiary butyl ether). The Parties have specified the issues open to the Tribunal to consider.  The present motions for partial summary judgment deal with several of those issues, and the cross motions to compel seek to resolve requests for information related to those issues.

Given the significance of the discovery issues, the Tribunal turns first to address the parties' cross motions to compel.  It thereafter addresses the merits of each of Tosco's motions for partial summary judgment. The Tribunal grants various aspects of the motions to compel. It denies without prejudice all five of Tosco's motions for partial summary judgment, but provides such guidance as it is able at this stage of the proceedings as to the applicable legal principles.

I. **Cross-Motions to Compel**.

A. **Unresolved Tosco Demands.** Tosco's unresolved

2

demands for information fall into the following categories:

    1.  <u>Reinsurance Policies and Claims Materials.</u> Tosco Requests Numbers 2 and 16 seek discovery of all of Gerling's insurance and reinsurance agreements that Gerling may rely on to recover for amounts that may be paid to Tosco under the Policy at issue, as well as all documents related to any claims made or anticipated by Gerling on those policies as a result of its potential liability to Tosco.  Tosco reasons that these materials may contain information as to how much Gerling itself knew about the risks posed by MTBE; and to the extent Gerling was aware of the risks when it wrote the Tosco policy, that would show it did not rely on Tosco representations and would have issued the policy without regard to any of Tosco's alleged misrepresentations.  Tosco's supplementary submission has advanced arguments along these lines, to which Gerling has responded. The information might also contain statements by Gerling, Tosco argues, that cast light on its positions on the issues now being raised by the Parties as to the meaning of the Policy. Tosco has agreed that Gerling may redact from this information the identity of the reinsurers involved and the amounts paid by Gerling for the reinsurance policies.

    Gerling has agreed to provide Tosco all its notifications to reinsurers of Tosco's claimed MTBE losses. Otherwise, Gerling refuses to produce the reinsurance policies and opposes the other disclosures sought as seeking information that Gerling claims is unlikely to result in the discovery of relevant evidence, and the disclosure of which would reveal private and confidential material.

    The Tribunal declines at this time to order the production of additional documents/information as to Gerling's reinsurance policies. The Tribunal does, however,

agree that Tosco is entitled to discover documents and other reasonably accessible information as to what Gerling learned about MTBE risks prior to January 1, 2000. To the extent such information is in any of Gerling's MTBE reinsurance files, it must be provided. The Tribunal believes that Gerling is entitled to discovery of the same information concerning what Tosco learned before January 1, 2000 as to the risks of MTBE from any of its insurance files or other corporate materials.

   2.  Other Policyholder Underwriting MTBE-Related Information.  Tosco Request No. 8 seeks all of Gerling's underwriting documents related to its policies for any other oil and gas clients, from 1992 to 2001 reasoning that they may contain evidence that Gerling was aware of MTBE risks and sought nevertheless to insure parties against those risks.

      Gerling has agreed to provide all the documents it has in its files related to the Tosco policy, but it refuses to provide any documents related to its other policies covering MTBE risks as such discovery would be overbroad, unduly burdensome, would not lead to usable evidence, and would improperly result in the disclosure of private and proprietary information that is irrelevant to any of the issues in this arbitration.

      The Tribunal declines to order further information concerning Gerling's policies with other oil and gas companies. As indicated above, however, the Tribunal does order Gerling (and Tosco) to supply any documents in its possession or control reflecting information it obtained prior to January 1, 2000 concerning the harmful effects of MTBE.

   3.  Other Policy MTBE-Related Claims Information.

4

Tosco's Request No. 9 seeks all documents related to all MTBE claims made against Gerling under any other Gerling policies, in order to know what claims have been made, how Gerling handled those claims, what Gerling must have known as a result of those claims, and the positions Gerling may have taken in handling those claims on issues relevant to Tosco's current effort to recover under the Policy. Tosco Request No. 10 seeks the same information from Resolute, Inc., the company that is managing Gerling's response to those claims.

Gerling has agreed to provide Tosco with the documents reflecting all MTBE claims made directly by Gerling policy-holders other than Tosco, with names redacted. It has otherwise refused to produce any of the information sought in Tosco Requests Nos. 9 and 10 related to MTBE claims made under any of its other policies, for the same reasons given regarding Tosco Request No. 8. The Tribunal declines to order additional material on the subject of MTBE claims handling at this time; it may later decide, however, to order information on specific issues that are related to the issues being considered in this proceeding.

In its Requests Nos. 11 and 12, Tosco seeks all information, from Gerling and Resolute respectively, related to payments made by Gerling under any of its other policies, for MTBE-related claims, for the Underlying Claims (presumably those for which Tosco is seeking payment in this arbitration), and as a result of MDL 1358.

Gerling has reportedly refused to provide any of this information, for essentially the same reasons given in its response to Request No. 8. The Tribunal orders Gerling to produce information in some reasonable form establishing the manner in which Gerling handled any of the Underlying

Claims (i.e., those claims upon which Tosco relies in seeking the recovery in this arbitration) on which Gerling has made payments, if any.

4. <u>Other Policy Holder Settlement Information.</u>  Tosco Request No. 26 seeks all documents related to any Gerling settlements of claims under other policies for MTBE liabilities resulting from the "Underlying Claims." Tosco argues that this information is necessary as it may help it establish that Gerling was aware of Tosco's settlements, and that, compared to Gerling settlements, Tosco's settlements are reasonable.

Gerling has refused to provide any documents related to its settlements of MTBE claims under its other policies, even of the "Underlying Claims," for essentially the same reasons given in response to Tosco Request No. 8.

The Tribunal notes that Tosco has in particular sought the production of settlement agreements provided to Gerling by its other insureds in MTBE cases. The Tribunal does not regard such settlement documents as probative of any issues in the present proceeding, as they do not establish binding precedent for Gerling's views as to those issues. The Tribunal has already ordered that Gerling must produce documents related to its handling of any of the Underlying Claims, and that includes any settlements it may have reached in such cases.

B. **<u>Unresolved Gerling Demands.</u>** Gerling has made several production demands with which Tosco has refused to comply.

1. <u>Defense Bills for the Underlying Claims.</u> Gerling asks for proof of the costs for which Tosco claims

indemnification under the Policy. Gerling is certainly entitled to documentation adequate to establish that Tosco paid the amounts at issue for covered liabilities, and that the payments for costs and fees were reasonable. Tosco originally refused to produce these documents, on the ground that their production would be unreasonably burdensome. It has since proposed that production of this set of documents be delayed until after the Tribunal decides whether Gerling has any liability under the Policy.

The Tribunal agrees that in principle Tosco's proposal is a sound basis upon which to proceed. But the circumstances here may justify certain production or measures at this time. Defense costs may in this matter be significant as to coverage, so the Tribunal would require Tosco at least to provide evidence as to the amount of such costs to the extent such evidence is currently in an accessible form and provides overall information. Tosco should in addition preserve and have reasonably available for production in the future the additional evidence it will need to satisfy its burden of proving the costs for which it claims indemnification.

2.  <u>All Internal/External Allocations of Liability for the Underlying MTBE Claims.</u> Gerling seeks disclosure of documents reflecting the settlement allocations reached by Tosco and other companies in settling the Underlying Claims. Tosco has refused to provide the documents on the ground that they were prepared collectively with other companies and are covered by the joint defense privilege. Also, their production by any individual participant requires the agreement of all the other participants. Gerling responds that the allocations are relevant to many issues in this arbitration, not merely to the portion of liability accepted by Tosco in the Underlying Claims. The documents may contain

7

admissions by Tosco, and other useful facts, such as the time it began introducing MTBEs into the marketplace, and the methods by which such introductions took place. The materials could also cast light on whether the claims advanced by Tosco are covered by the Policy, and whether they are ineligible under the pollution exclusion.

Much of the information sought by Gerling may now be available, since Gerling has agreed to sign a confidentiality agreement proposed by Tosco to overcome the disclosure limitations. To the extent additional documents are responsive to Gerling's request, the Tribunal agrees that the documents sought may contain admissible evidence, in particular the allocations agreed to in the MDL proceeding involving MTBEs in the Southern District of New York and in other settlements. To the extent that Tosco asserts any privilege as the basis for withholding any of the documents covered, Tosco should list such documents on a privilege log with appropriate identifying information. In addition, Tosco should supply Gerling, in a form that would be admissible in evidence, any factual material in the documents withheld that reflect relevant admissions by Tosco as well as any data or factual evidence related to the need to determine the reasonability of the settlements reached, including the methodology utilized in determining the allocations agreed.

3. Complete Copy of Settlement Agreement in the Underlying Coverage Action.  Gerling specified in an email dated May 11, 2013 that it has sought a complete copy of the settlement agreement entered into by Tosco apparently in the major Underlying Coverage action at issue here, a portion of which has been supplied as an attachment to the March 29, 2013 affidavit of Mr. Ellison. The Parties may have reached agreement on this issue. If not, Tosco is ordered to supply the complete agreement, subject to any

privilege that it wishes to assert for resolution by the
Tribunal.

## II.   __Tosco Motions for Partial Summary Judgment.__

Tosco's five motions for partial summary judgment are for
specific rulings related to: (1) Respondent's Defense
Regarding Reasonable Settlements; (2) Indivisibility and
Allocation of Property Damage Caused by MTBE to a Single
Policy Period; (3) Respondent's "Other Insurance" Defense;
(4) Respondent's "Expected/Intended" Defense; and (5)
Application of the Blended Pollution Endorsement. These
motions do not seek final "judgments" in the sense usually
associated with motions for summary judgment; rather, and
without objection from Gerling on any procedural ground,
they seek rulings on the law applicable to each of the issues
raised.

Gerling has made four arguments as to why the
Tribunal should deny (or at least refuse to decide) Tosco's
summary judgment requests for rulings of law.  First, it
argues that Tosco has failed to provide Gerling with
discovery on when Tosco learned various facts about the
damaging effects of MTBE.  The principal purpose of
discovering this information, Gerling contends, is to prove its
"Expected/Intended" defense, as well as, presumably, a
misrepresentation defense if it decides formally to present
one. Gerling also opposes Tosco's motions on the grounds
that genuine issues of material fact exist, that Tosco is
attempting to avoid its burden of proof on each of the issues
it seeks to have decided, as well as to rewrite the terms of
the Policy, and that granting any of the summary judgment
motions Tosco has made would deprive Gerling of due
process.

The Parties have agreed that the Tribunal has the

procedural authority to consider the preliminary rulings
sought by Tosco, despite their non-dispositive nature, as
rulings on those motions could potentially serve the useful
function of clarifying the issues to be tried. The Tribunal has
decided at this time to deny all the summary judgment
motions without prejudice to their renewal after discovery is
complete, but to provide as much guidance as possible at
this early stage in the proceeding to assist the parties as
they complete discovery and prepare for the hearing.

   A. **Motion Regarding the Reasonableness of
Settlements**.  Tosco seeks essentially two rulings related to
the burden it must meet in order to demonstrate that any
settlements it has reached are eligible for indemnification
under the Policy. First, it seeks a ruling that it is entitled to
recover on all settlements that were "reasonable" at the time
they were reached, based on "objective" rather than
"subjective" criteria. Second, it argues that this principle is
applicable to its decision to participate in "global"
settlements, despite the fact that such settlements may
include claims that would not be covered by the Policy if
considered individually.

   Gerling responds that issues other than the
reasonability of settlements must be addressed in order for
claims based on settlements to be deemed to have been
proved entitled to indemnity under the Policy. One
requirement that Gerling advances is based on the language
of Article V(d) of the Policy, which provides that liability "shall
not attach" until the limits of the underlying amounts have
been paid, or the Insured's liability "shall have been fixed
and rendered certain" either by final judgment after trial or
"by settlement approved in writing by the Underwriters."
Regarding the two requests for rulings in Tosco's motion,
Gerling contends in effect that the "objective"/"subjective"

distinction cannot be allowed to preclude Gerling from obtaining evidence it is entitled to know about relevant facts and reasons for Tosco's conclusions as to the reasonability of the settlements it reached, and that, while Tosco may be free to enter into "global" settlements, such agreements – even where based on legal rulings making particular Policy requirements irrelevant as to liability – cannot alter the Policy's terms concerning coverage by including claims that are ineligible for indemnity under the Policy, which reflects the bargained-for exchange reached by Tosco and Gerling.

     1. <u>Requirement that Gerling Consent.</u> Gerling's argument that Tosco obtain its consent to any settlement is based on Article V(d) of the Policy, which provides that to become attached any liability must be "fixed and rendered certain either by final judgment against the insured after actual trial or by settlement approved in writing by the Underwriters." New York law requires that such requirements be taken literally when clear, Gerling contends, and it refers in this regard to *Vigilant Ins. Co. v. Baer Stearns Companies, Inc.,* 10 N.Y.3d 170 (2008), where the Court of Appeals held the insurer entitled to avoid liability for a settlement of over $5 million under a provision unambiguously requiring its consent before any settlement, defense cost, contractual obligation, or other admission of liability above that amount. This ground, Gerling notes, is its "primary defense in relation to Tosco's settlements," and that Tosco is therefore not entitled to summary judgment on the issues it has raised. Gerling Memo, p.21.

     Tosco has not yet responded to this Gerling defense, and the Tribunal therefore refrains from any comment on the issue. Tosco has not sought a ruling that it is entitled to recover from Gerling on the basis of its settlements, but rather has sought only the two rulings noted above as to the

applicable standards of law that the Tribunal plans to follow regarding the standard by which to evaluate such settlements, and whether "global" settlements may include individual claims that would not qualify for indemnity if considered on their own. The issue Gerling has raised under Article V(d) must be briefed and decided before any final decision on liability is reached, but Tosco is entitled at this time to seek the limited rulings requested on this motion.

2. The Standard and Evidence Considered in Evaluating Settlements. Tosco and Gerling agree that Tosco is entitled to recover for "reasonable" settlements reached in good faith of claims posing "potential" liability covered by the Policy. Actual liability need not be established.  Gerling, however, stresses that the settled claims must fall within the coverage of the Policy to be eligible for payment. This requires proof under New York law that the claims are of a "type" the Policy covers, as Tosco appears to concede.

Tosco's first request is that the Tribunal rule that whether a settlement was reasonable should be based on "objective, record evidence" or "objective facts," and not on "subjective" evidence or "internal views" or opinions of officials or counsel. The Tribunal cannot be sure what these proposed standards would mean in practice if applied, or whether the results of applying them in terms of available evidence would be inconsistent with the well-established rule under New York law that the reasonableness of settlements must be judged on the basis of the facts known to and conclusions reached by the insured at the time it settled. See, e.g., *Luria Bros. & Co. v. Alliance Assurance Co., Ltd.,* 780 F.2d 1082, 1091 (2d Cir. 1986). Gerling agrees the established rule is an "objective" standard, but it contends that the "knowledge and beliefs of the insured still will come

12

into play and discovery will need to be done to evaluate each of them." Gerling Memo, p.26.

The Tribunal agrees that, whether a judgment to settle is reasonable will depend on the facts known and conclusions reached by Tosco at the time it settled, which may well include judgments, "opinions," and estimates, for example, as well as such considerations as the manner and methods by which Tosco went about making its judgments. This is why the Tribunal has ruled that Gerling is entitled to discover documents reflecting the facts and conclusions upon which Tosco's judgments were based, as well as those reflecting the manner in which, and the methods by which, Tosco went about making its judgments. Tosco properly notes that it has the right to withhold privileged evidence contained in its non-public documents, but that is a process that requires particular application of privilege rules to the evidence in question, and the Tribunal will pass on the propriety of withholding such evidence based on a log identifying the evidence withheld and the specific claims of privilege asserted.

3. <u>Legitimate Scope of "Global" Settlements.</u> The Parties agree in principle that Tosco is entitled to enter into "global" settlements, and that such settlements are generally subject to the same reasonableness test as the settlement of an individual claim. Tosco refers to authority that supports the utility of global settlements, especially in cases where it is difficult to know when a particular injury occurs, or by which of several defendants it was caused. In *Stonewall Ins. Co. v. Asbestos Claims Management Corp.,* 73 F.3d 1178, 1188-90 (2d Cir. 1995), the Second Circuit upheld a global settlement between some 34 former manufacturers of products containing asbestos with their numerous insurance companies in which each manufacturer was assigned a

13

portion of the cost of processing claims and liability "based upon specific occupational categories of claims, the number of claims in which a producer was named, and each producer's historical liability for claims in each category." The trial court and jury found this arrangement, which was modified to more accurately reflect the facts as they developed, to be a reasonable method for financing the process, even though insurers were thereby effectively required to pay their share for cases in which they were not named.

Tosco also relies on the recent New York Court of Appeals decision in *United States Fidelity & Guaranty Co. v. American Reinsurance Co.,* 20 N.Y.3d 407 (2013), where the Court upheld the use by manufacturers and insurers of the use of a global settlement to allocate liability in "good faith" based on objective and reasonable factors, even "legitimate" non-insurance reasons.

Faced with decisions by courts that assigned liability to MTBE defendants on the basis of their distribution of MTBE gasoline during a period of several years, Tosco has settled several groups of the complaints filed against it by paying what it describes as "a fixed percentage share" of the total agreed payment. It notes decisions that have upheld the reasonableness of such settlements for particular defendants even where some settling defendants are not named in some of the cases in the group settled, or where a group of cases settled include some claims based on exposures after the expiration of a settling defendant's policies. Such settlements have been considered potentially reasonable in principle, if they meet the test of New York law that "the insured need not establish actual liability to the party with whom it has settled 'so long as . . . a potential liability on the facts known to the [insured is] shown to exist,

14

culminating in a settlement in an amount reasonable in the view of the size of possible recovery and degree of probability of claimant's success against the [insured]." *Luria, supra,* 780 F.2d at 1091, quoting from *Damanti v. A/S Inger,* 314 F.2d 395, 397 (2d Cir.), *cert denied,* 375 U.S. 834 (1963).

Gerling accepts these principles but stresses that, under New York law, even a reasonable "global" settlement is subject to the rule that the claims settled must be covered by the policy at issue. In *Servidone Constr. Corp. v. Security Ins. Co. of Hartford,* 64 N.Y.2d 419, 424-25 (1985), the Court of Appeals held that, even where the insurer had wrongfully refused to defend and the settlement's reasonableness was uncontested, the duty to indemnify is "distinctly different" and insurer had no duty to pay a settlement (there of a single claim) "unless there is first a covered loss." The Court held this must be shown, not from the allegations of the pleadings (as is the case in establishing a duty to defend), but from "the actual facts," and must go beyond establishing "the mere possibility of coverage"; the Court made clear, however, that a trial is not required and placed upon the insurer the burden of demonstrating that the loss compromised by the insured was not within policy coverage." The law has developed as Gerling explains in Slide 6 of its presentation at oral argument: "This does not mean that the insured must prove that it was guilty of what the third party claimant is alleging. It means only that the insured must prove that, if what the third party claimant was alleging was true, it would amount to a claim covered under the Policy."

The recent Court of Appeals decision in *United States Fidelity & Guaranty Co. v. American Reinsurance Co., supra,* Gerling notes, involved a reinsurance case with a "Follow the Settlements" clause that carries a strong presumption that

15

required the reinsurer to pay on the basis agreed by the insurer. Even in that context, Gerling points out, the settling parties' failure to attribute part of the settlement's value to a claim of bad faith (which would not have been covered by the policy involved) was not accepted as reasonable by the Court, in light of the insured's own estimate that the bad faith claim posed a serious risk of substantial liability. Likewise, the decision to value all lung cancers in that asbestos-exposure litigation at $200,000 each was not supported by the evidence, which raised issues of fact in that it indicated that most lung cancer claims made were uniformly given significantly lower valuations. The Court considered such allocations in the global settlement as requiring further proof, given the policy's coverage requirements.

These rules entitle Tosco to seek relief on the basis of "global" settlements it reached that are found to be reasonable under New York law, where Tosco agreed to pay a set percentage of the total paid in settling the cases involved. To establish its entitlement to such treatment, however, Tosco must provide sufficient information about the allocations underlying such "global" settlements to enable Gerling (and the Tribunal if necessary) to decide whether the settlements were reasonable based on the facts available to Tosco at that time.

The test is "objective," but requires disclosure of the evidence Tosco considered and the judgments it made, since it bears the burden of proving the provisions and allocations were reasonable and in good faith, as well as consistent with coverage requirements. The Tribunal is prepared to revisit these issues after discovery permits the parties to develop the relevant facts.

B. **Motion Concerning Indivisibility & Allocation of Property Damages to Single Policy Period.** Tosco moves

for partial summary judgment on the proposition that, given the indivisibility of Tosco's liability for MTBE injuries, the Policy expressly provides for the allocation of "all" actual, alleged, or deemed property damage caused by Tosco's MTBE distribution to be allocated to the single period of August 1, 1998 to August 1, 1999, either as a result of "Occurrence Integration" or pursuant to notice duly given of a "Batch Occurrence." Based on this principle, Tosco insists that the damages it has caused, alleged to have caused, or deemed to have caused, must be integrated into the single policy period at issue "irrespective of the period or area over which the actual or alleged injuries or damages occur." Tosco Memo, p.2.

Tosco notes in this regard that the Tribunal "may not impose a new allocation methodology different from the methodology to which the parties [to Tosco's settlements] agreed." The issue of what Tosco agreed to in a settlement is not, however, relevant to Tosco's integrated occurrence motion. Here, the Tribunal understands Tosco to be seeking a ruling that confirms its authority to recover on the basis of an integrated occurrence irrespective of whether it has incurred liability on the basis of reasonable settlements arrived at in good faith.

Gerling's response to Tosco's integration claim is that the Policy provides for coverage for injuries caused in certain periods, and that these temporal limitations apply irrespective of the nature of MTBE pollution and how liability is determined by the courts. The Policy, Gerling notes, provides coverage for liability for damages on account of "an occurrence" and defines occurrence to mean an event or condition which causes liability "which event or conditions commence at or subsequent to the Inception Date [August 1, 1998] (or, if applicable, the Retroactive Coverage Date) and

17

prior to expiration of Coverage A," or a "use" which causes liability "taking place both prior to the expiration of Coverage A and at or subsequent to the Inception Date (or, if applicable, the Retroactive Coverage Date) . . . ." Art. III(e).

Tosco responds that, given the nature of MTBE pollution (its indivisibility) and the fact that courts are unwilling and/or unable to allocate responsibility to any particular source, it is impossible to establish the amount or proportion of Tosco's alleged liability for MTBE damage occurring "(1) on or after the Retroactive Date; (2) occurring before July 31, 1999; and (3) arising out of Tosco's distributions of MTBE into the stream of commerce before July 31, 1999."

Gerling notes, however, that Tosco has admitted having (along with other MTBE manufacturers) arrived at an allocation of its liability in the form of an agreed percentage of all liability, "according to various metrics, which Gerling believes will include facts relevant to coverage," i.e., facts that could enable the Tribunal to estimate rationally Tosco's share of liability on the basis agreed, while excluding allocations of liability to Tosco clearly inappropriate for coverage under the Policy. Gerling Memo, p.32.

Instead of attempting to establish that all the liability to which it agreed in its settlements stems from occurrences during any specific period, Tosco argues that the Policy qualifies the temporal limits cited by Gerling to allow both "Occurrence Integration" (Art. III(f)) and "Batch Occurrence" (Art. V(d)). The former requires that injuries or liability qualifying as an occurrence integration "shall be" integrated as a single occurrence "irrespective of the period or area over which they occurred . . . ." The latter requires, once notice is given, that the parties use the year of notice to set

18

the aggregate limit per occurrence. Tosco argues that Gerling's cited criteria for limiting occurrences "are not relevant issues under the Gerling Policy's terms . . . ," given these provisions allowing integration and batch occurrence.

Both sides cite decisions applying New York law in support of their positions. The Tribunal regards this issue as complex and unsettled, noting in particular the fact that the result in a given case may turn on the specific circumstances, including the feasibility of establishing when liability occurred, or whether it can be shown not to have occurred. Gerling claims, and the evidence may show, that reliable estimates can be made based on criteria related to Tosco's responsibility for injuries or property damage. The Tribunal has no view on the likelihood of that outcome. But it has concluded that it should rule on the underlying issue of the meaning of coverage only after discovery is complete on the terms of and materials related to Tosco's settlements. In the meantime, the Tribunal denies Tosco's motion.

C.  **Motion Concerning "Other" Insurance.** Tosco seeks a ruling effectively denying Gerling's defense to Tosco's claim based on the Policy's provision that the coverage it provides is in excess of all of Tosco's valid and collectible insurance, purchased prior to, simultaneous with, or after Tosco purchased the Gerling Policy. Tosco asks the Tribunal to rule that, at the time Tosco settled the California Coverage Litigation with Allianz and National Union in 2001, thereby exhausting those two policies, it had no "other" insurance available, because California law then precluded the "stacking" of insurance policies, requiring instead that plaintiffs in cases involving continuous injuries over a long period choose one year's policies as the source of recovery. This legal rule was rejected by the California Supreme Court years after the settlement at issue, but Tosco argues that the

New York Court of Appeals has authoritatively determined that the California rule as of the time of settlement controls and therefore as a matter of law Tosco had no available underlying insurance other than the two policies it exhausted through its settlement with Allianz and National Union.

The Parties agree that the decision in *FMC Corp. v. Plaisted & Cos.,* 72 Cal. Rptr. 2d 467 (Cal. Ct. App. 1998), required an insured in California (which recognized "continuous trigger" coverage) to specify a particular year's policies in recovering for such injuries, limiting coverage to all injuries up to and including that year. This so-called anti-stacking rule was rejected in *State of California v. Continental Ins. Co.,* 281 P.3d 1000 (2012), but the New York Court of Appeals has recently made clear that the anti-stacking rule should be applied to settlements adopted while the rule was in effect, *United States Fidelity & Guaranty Co. [USF&G] v. American Re-Insurance Co. [Am. Re],* 20 N.Y. 3d 407 (2013). Tosco contends that it is in the same position as the reinsurer in *USF&G*, and that the Tribunal should therefore apply the same rule applied by the Court in that case.

Gerling rejects the very premise of Tosco's argument, i.e., that California law controls Tosco's coverage dispute with its underlying insurers. It notes that both National Union and Allianz contested Tosco's claim that California law applied, that the California court entering the settlement never addressed the choice of law issue, and that the settlement agreement itself does not stipulate that California law should be applied in construing or enforcing the settlement. Gerling argues that, while Tosco was a California-based company at the time of the settlement, Tosco was based in Connecticut at the time Allianz and National Union issued its policies; that National Union was

20

not a California company; and that the Underlying Policies provided for performance "anywhere in the world."

Gerling contends that these uncontested facts establish that, under controlling California choice of law principles, Connecticut law applies to the settlement agreement. It cites *Frontier Oil Corp. v. RLI Ins. Co.,* 153 Cal. App. 4th 1436, 1459 (Cal. App. 2d Dist. 2007), for the proposition that, where an insurance policy fails to specify the applicable law or the place of performance, courts must apply the law of the state where the contract was made, relying on Calif. Civil Code Section 1646. The evidence available indicates that the contract was made in Connecticut, not California, and that, therefore, at the very least full discovery must be had on the applicable-law issue before any final ruling is made.

Tosco's argument for the application of California law rests on its statement that the settlement with Allianz and National Union was "effected under California law," that the principal place of business of both Tosco and Allianz was in California, and that the two lawsuits settled were both commenced in California. Tosco also states that, in its settlement agreement with the two insurance companies, "Tosco released its rights under all other general liability insurance policies at issue in the California Coverage Litigation." Tosco Memo, p.4.

Gerling submits, however, that the settlement agreement indicates that Tosco and its underlying insurers did not act in a manner consistent with the belief that California's anti-stacking rule applied to their settlement. Gerling notes that the settlement agreement releases Allianz and National Union (AIG), not only under the 1998-99 policies, but also for all other policies identified in an Exhibit D to the settlement (which is not provided on the motion).

21

The agreement also provides that Tosco will be free to pursue recoveries from "other" policies, several of which are apparently listed in Tosco's motion papers, but the complete list of which is listed in Exhibit 4 to the agreement (which is also not provided in the motion papers). To pursue recoveries from additional policies requires the permission of Allianz and National Union, whom Tosco agreed to hold harmless against suits by other insurers, and who assigned their rights vis a vis the other insurers to Tosco. The three parties agreed, moreover, on a set of priorities for the distribution of insurance recoveries by Tosco pursuant to its efforts. These provisions exist, Gerling suggests, because even Tosco believed that it was not precluded by California law from relying on its "other" insurance, and that it planned to pursue (and may have in fact pursued) such recoveries. Tosco has not at this point responded in detail to these arguments.

Gerling argues that, even if California law governs the Tosco settlement, the issue of Tosco's obligation to exhaust all primary insurance policies prior to collecting on Gerling's excess policy is governed by a separate line of authority from the decision in *FMC v. Plaisted & Cos.,* 61 Cal App. 4th 1132 (1998), because that opinion made clear that it did not address the issue of exhausting other underlying insurance, but rather concerned only the stacking of successive excess or umbrella policies in continuing-loss situations. The *FMC* decision stated in this regard: "Exhaustion of FMC's primary coverage (cf. *Community Redevelopment Agency v. Aetna Casualty & Surety Co.* (1996) 50 Cal. App.4[th] 329, 337-340, 57 Cal. Rptr.2d 755) is not an issue on these appeals." The *Community Redevelopment* decision on the other hand did address the exhaustion of primary coverage policies, Gerling argues, and it ruled that a policy holder must exhaust **all** primary policies during a period of continuous loss before

seeking indemnification from any excess insurer, such as Gerling: "Under the principle of horizontal exhaustion, all of the primary policies must exhaust before any excess will have coverage exposure." 50 Cal. App. 4th at 340. Gerling claims its "Other Insurance" provision brings it within this exception to the (now overruled) California anti-stacking rule; the Gerling policy is expressly excess of underlying insurance issued prior to, simultaneously with, or subsequent to the Policy at issue, not just excess of the 1998 underlying policies. Policy, Art. V(i). Tosco's revealed liability policies underlying Gerling's excess coverage provide, according to Gerling's calculations, at least $225 million in coverage.

Gerling also contends that the *USF&G* ruling is inapplicable to the present situation, because it involved a reinsurance policy, with a "follow-the-settlement" clause that required the reinsurer to accept the consequences of any settlement approved by the underlying insurer in good faith. No such requirement applies, Gerling argues, to a excess insurer, which by the terms of its agreement is not required to pay on any settlement until after all underlying, applicable policies are exhausted. Tosco has not yet responded in writing to these arguments.

The Tribunal is unprepared on this record to grant summary judgment to Tosco that it has satisfied the "other insurance" requirement of the Policy. In order for Tosco to prevail on this issue it will have to establish that California law is applicable to the settlement agreement, that the no-stacking rule would have been applied by the California courts in the present situation to prevent the Policy's exhaustion requirement from being enforced, and that, as the parties established in *USF&G,* Tosco and its two insurers in fact relied on and implemented a settlement consistent

with the no-stacking rule that they claimed to have applied, including an explanation of what, if anything, Tosco has done to implement its authority under the settlement agreement to pursue other coverage.

D. **Motion Concerning the "Expected or Intended" Defense.** Tosco seeks rulings from the Tribunal (1) that Gerling has the burden of proving that recovery for a covered "occurrence" under the Policy should be denied because the injury was "expected or intended," and (2) that Gerling is unable to establish this defense with regard to MTBE spills on the basis of the evidence advanced in its responsive pleadings, specifically the statements and testimony in 1997 of Mr. Bardvick, an officer at Tosco, urging the adoption of legislation by Congress and the State of California that would enable refiners to stop using MTBEs in fuel to meet air quality standards. Tosco also contends that, even if Gerling were able to establish that Tosco expected or intended MTBE injuries in 1997, it cannot establish that Tosco is ineligible for the exception in the Policy for an insured that experiences losses that are different in kind or significantly greater than could have been expected based on prior experience, since Tosco's lack of any monetary losses prior to 1999 provide no baseline for such comparisons that could enable Gerling to refute Tosco's position. Tosco seeks these rulings so that the parties will have a common basis upon which to approach trial of these issues at the hearing on the merits.

Gerling rejects Tosco's claim that Gerling bears the burden of proof on the "expected or intended" requirements under New York law. The New York Court of Appeals in *Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co.,* 98 N.Y.2d 208 (2002) placed the burden of proving an "occurrence," as defined in the policy at issue there, on the

insured, and treated the requirement of proving an occurrence to include proving "fortuity," i.e., that the harm for which coverage is sought was "neither expected nor intended." "Insurance policies generally require 'fortuity' and implicitly exclude coverage for intended or expected harms." 98 N.Y.2d at 220.

Assuming that Tosco has the burden of proof on the issue, it remains unclear what burden Tosco actually must bear to establish that the damages it caused were neither expected nor intended. Gerling argues, among other things, that New York law applies an "objective" standard to this issue, to determine whether the insured "knew or should have known that a certain result would take place." Gerling Memo, p.62. This standard could be read to cover negligent conduct, and to that extent it would be inconsistent with the guidance provided on this issue by the New York Court of Appeals in *Continental Casualty Co. v. Rapid-American Corp.,* 80 N.Y.2d 640, 649 (1993), that the terms "expected and intended" have been read "narrowly" to bar "recovery only when the insured intended the damages. Resulting damage can be unintentional even though the act leading to the damage was intentional . . . ." As to the meaning of "expected," the Court stated: "A person may engage in behavior that involves a calculated risk without expecting that an accident will occur – in fact people seek insurance for just such circumstances . . . *see also, City of Johnstown v. Bankers Std. Ins. Co.,* 877 F.2d 1146, 1150 [2d Cir.][ordinary negligence does not constitute an intention to cause damage; neither does a calculated risk amount to an expectation of damage])."

Contending that the language in *Continental Casualty* requires courts to apply a "subjective" standard, requiring proof of deliberate or malicious purpose, could be seen as

25

reading out of the Court's decision its references to the meaning of "expected"; on the other hand, contending that the word "expected" should be read to establish an "objective" standard based on what a reasonable person should have expected to occur in given circumstances could be seen as reading out of the Court's decision its reference to the fact that taking a "calculated risk" to proceed with an activity despite the prospect of injury – and to insure against that prospect – would not preclude coverage. The Court's reference to N.Y. Insurance Law 1001(a)(1), in *Consolidated Edison, supra,* 98 N.Y.2d at 220, may provide some guidance on this issue by its quotation of the statute's definition of "fortuitous event": "[A]ny occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party."

The Tribunal appreciates the thorough and helpful supplementary filings made by the parties on these issues. It sees no advantage at this point in the proceedings, however, in going beyond the established principles of New York law thus far discussed in this decision. As both the parties agree, the inquiry on "expected or intended" is necessarily fact specific, and Tosco has not provided Gerling with discovery to which Gerling is entitled with regard to what Tosco (including any of its officials or employees) knew as to the consequences of distributing fuel with MTBE at the time it purchased the Policy from Gerling. Tosco's argument that Mr. Bordvick's testimony is insufficient as a matter of law to prove that Tosco expected or intended the MTBE injuries is based on the erroneous premise that Gerling bears the burden of proof on that issue. While Gerling has indicated its belief that the Bardvick testimony is sufficient to establish that Tosco did "reasonably" expect and intend the injuries (Memo, p.64), it has not made a motion for summary judgment on that basis. The Tribunal regards the Bardvick

evidence as probative of whether Tosco expected or intended the injuries, but the weight to give the evidence will depend on its context, and on the information on which it was based.

Tosco argues that, even if it could be shown to have expected or intended the injuries involved, it is entitled to a ruling that the testimony Gerling has advanced is insufficient to deny Tosco the right to recover based on what it terms the Policy's "maintenance deductible." This argument is also based on the premise that Gerling, and not Tosco, bears the burden of proving the injuries are within the Policy provision at issue. Tosco argues that Gerling cannot prove the inapplicability of this exception to the expected or intended requirement, because no claims at all were made against Tosco prior to 1999. Based on that factual premise, Tosco contends, Gerling will never have the requisite basis for contesting Tosco's proof that its claims based on the California settlement are eligible for coverage, because Tosco's experience during the period covered by the Policy unquestionably reflected a level or rate of injury, damage, or liability "different in nature or vastly greater in magnitude" from the damage, injury, damage, or liability it had previously experienced. The Tribunal cannot rule on this issue, however, until Tosco has fully complied with its discovery obligations, and so denies Tosco's motion on this ground as well.

The Tribunal does, however, find unpersuasive Gerling's apparent contention that the Policy treats as ineligible for coverage any claim that is "either" expected or intended, "or" that fails to reflect a level of loss different in nature or vastly greater in magnitude than Tosco's prior experience. Gerling, Memo, pp.65-66. Tosco has distinguished the Bermuda Form language used in this

27

regard from the usual policy language, and appears to suggest that the provision expands Tosco's burden rather than provides a limited exception to the expended or intended requirement. The Tribunal is not prepared to rule definitively at this time on all aspects of this complex issue. It appears to the Tribunal, however, that the so-called maintenance deductible is an exception to the expected or intended requirement and explicitly provides that qualifying claims "shall not . . . be deemed expected or intended" to the extent they are different or incrementally greater than prior experience. Gerling Policy, Sec. III(e). If Tosco is able to establish the difference in experience required by the Policy, the language indicates that it will have also established that those claims were to that extent not expected or intended. The Tribunal will entertain further argument on this issue if necessary after discovery is complete.

**E. Motion Regarding Application of the Blended Pollution Endorsement.** Tosco's final motion for partial summary judgment seeks a ruling that coverage under the Policy exists for its MTBE liabilities under the exception to the Blended Pollution Endorsement (which excludes coverage for most forms of pollution) for what the Policy terms, simply and without definition, "Product Pollution Liability." Endorsement 5, Para. 2(a). Tosco makes no effort to claim its MTBE liabilities fall outside the pollution exclusion. It argues, rather, that the exception applies to all its otherwise covered liabilities, without any qualifications as to where, when, and by whom the pollution took place.

Gerling acknowledges the exception for "Product Pollution Liability" and that the Policy contains no definition of the term. It contends that the Tribunal should, however, treat the phrase as intended to incorporate the requirements and limitations contained in the Policy's definition of "Product

28

Liability," which it notes is essentially identical to the definition of "Product Pollution Liability" contained in the 1996 insurance policy between the parties.

Tosco initially argued that the definition of Product Pollution could not be relied on, since it had been deleted from the Policy. Gerling has apparently established, however, that that definition remains in the Policy. Tosco objects to any use of the 1996 policy to define a term in the 1998-99 Policy, and that objection has merit in that the Parties have explicitly instructed the Tribunal not to use extrinsic evidence in construing the Policy's terms.

The "Product Liability" provision, however, is not extrinsic evidence, and is a legitimate analogy to look to in construing linguistically related terms in the same Policy. That the definition of Product Pollution is very similar to the words used to define "Product Pollution Liability" in an earlier agreement between the same two parties cannot be used as proof of the meaning of the same words in the Policy at issue, but gives the Tribunal some comfort in looking to the analogous language on "Product Liability".

Tosco argues that, if the Parties had wanted to define Product Pollution Liability in the same manner they defined it in the earlier policy they could readily have done so. Similarly, it notes, the Tribunal should not use a definition of "Product Pollution" to create limitations to an exception that the Parties did not see fit to limit in the same manner.

These arguments are sound in principle, and the Tribunal acknowledges that it would be wrong to rely on the Product Liability definition merely because it is in the Policy. The problem the Tribunal is faced with in this situation, however, is that the Parties have insisted it may not look to

any extrinsic evidence to determine the meaning of Product Pollution Liability, but they do authorize the Tribunal to look to the Policy's other provisions in resolving disputes as to the meaning of any terms. Further, while Tosco's arguments are sound, the conclusion it reaches – that the Tribunal should given the exception a plain meaning of some sort, unrelated to the phrase "Product Liability" – is unjustifiable in light of the presence in both phrases of the words "product" and "liability." Tosco has failed, in other words, to provide a convincing alternative to Gerling's contention that the term "Product Pollution Liability" should be interpreted in light of the definition of "Product Liability" found in the Policy's Article III(n).

The policy considerations underlying the pollution exclusion support relying on the definition of "Product Liability" in determining the meaning of "Product Pollution Liability." The pollution exclusion is consistent with New York's policy of encouraging polluters to exercise care in commercial activities having a potential to cause pollution. As Tosco notes, this public policy led during the 1970s and 1980s to a prohibition in New York on the sale of insurance covering pollution, with certain limited exceptions. This legal prohibition was repealed, but the Policy's exclusion reflects the interest in encouraging care by potential polluters. This objective finds analogous support in the "Product Liability" definition's terms, which implicitly exclude from coverage those forms of product liability that are within the control of the manufacturer to control. That approach to product pollution liability makes sense in terms of the policy that the exclusion reflects.

The definition of "Product Liability" has essentially three requirements to bring Tosco liabilities under the terms of the exception to the pollution exclusion: (1) the liability must take

the form of injuries and damage "arising out of the end-use" of Tosco's goods or products; (2) such use must occur "after possession of such goods or products has been relinquished to others by the Insured" or other trading "in its name"; and (3) such use must occur "away from premises owned, rented or controlled by the Insured . . . ." All three of these requirements seem clearly intended to keep the liabilities from product pollution on the polluter to the extent the polluter is able to control the amount of pollution it causes. The Tribunal regards this purpose, and the relationship of the terms of the "Product Liability" definition to this purpose, as lending further support to relying on that definition in ascertaining the meaning of "Product Pollution Liability."

The Parties dispute the meaning of each of the three requirements expressed in the "Product Liability" definition, and the Tribunal provides such guidance on those terms as it considers possible at this time.

1.  "End Use." Tosco contends that "end use" must be construed along with the phrase "arising out of," and that this combination of terms leads to the conclusion that any use of Tosco's gasoline containing MTBE is an "end use" once the gasoline has been formulated.  Once manufactured and refined, Tosco argues, the MTBE gasoline has reached "its end-use state" as a product. In addition, since New York law defines "arising out of" more broadly than "caused by," and to include "originating from, incident to, or having connection with," *see, e.g, Maroney v. New York Central Mutual Fire Ins. Co.,* 5 N.Y.3d 467, 472 (2005), Tosco's position is that the exception for "product pollution liability" should be read to extend to all of the Underlying Claims. Tosco Memo, p.16. Gerling, on the other hand, contends that the "end use" of MTBE gasoline is its use in engines. Yet, even if Gerling were correctly reading "end use" in making this argument, it

gives no weight to the phrase "arising out of," which would seem to include such stages of the merchandising of gasoline as its storage in tanks at stations, and its being pumped into the engines in which it is used.

Taken together, the Tribunal concludes that the meaning of "end use" and "arising out of" are properly read under New York law to include the full range of end uses of the completed product (MTBE treated gasoline), not just use by an automobile driver, and to include the full range of functions that arise out of those end uses to the extent that some causal relationship exists between the end use and the injury or damage alleged.

Gerling correctly argues that the exception for Product Pollution Liability cannot be read so broadly as to encompass all liability covered by the pollution exclusion. It is fair to say that Tosco's reading comes close to doing just that. But that is because Tosco treats the "end use" requirement as the only prerequisite to satisfying the Product Pollution Liability exception. The "end use" requirement, however, is only one of three elements found in the "Product Liability" definition that Tosco must establish to bring liability for product pollution within the exception. The purpose of the Product Pollution Liability exclusion supports exclusion from coverage of end uses that are still under Tosco's possession or control, as the two other requirements provide.

2. <u>Relinquishment of Possession.</u> The Product Liability definition requires that the insured must have relinquished possession of the product out of the use of which the liability arises. It makes sense to apply this requirement as part of the exception for Product Pollution Liability, since so long as the product is within the insured's possession, the purpose of encouraging the insured to avoid pollution liability by

denying coverage is served. In the present situation, therefore, Tosco will not be entitled to obtain coverage under the Product Pollution Liability exception for liability that arises from end uses that remain under Tosco's control.

3. <u>Away from the Insured's Premises.</u> This element of the Product Liability definition is also an appropriate element to require Tosco to satisfy in order to qualify for the Product Pollution Liability exception. Even after Tosco relinquishes possession of MTBE gasoline, for example, Tosco may be ultimately in control of, or able significantly to affect, whether the product pollutes if the product remains on property that Tosco owns, rents, or controls. Thus, for example, title may pass from Tosco to a gasoline retailer of certain amounts of MTBE gasoline, which Tosco may then store in the retailer's tanks; but so long as the tanks are on property Tosco owns, rents, or controls, coverage rules aimed at encouraging Tosco to avoid allowing its product to pollute are reasonably assumed likely to have their intended effect. To bring its liabilities arising from end uses that pollute into the exception for Product Pollution, therefore, Tosco will need to establish that the product was not on property it owned, rented, or controlled at the time it caused pollution.

In conclusion, the Tribunal denies Tosco's motion for a declaration that all of the Underlying Claims fall within the Policy's exception for Product Pollution Liability. On the other hand, the Tribunal agrees in general, and subject to the specific evidence in this matter, that liability suffered by Tosco arising from end uses of MTBE gasoline would normally be deemed to fall within the exception so long as they occur after Tosco has relinquished possession of the product and the product is no longer on property Tosco owns, rents, or controls. The Tribunal will determine what evidentiary burden Tosco must bear in establishing these

requirements after discovery is complete and the feasibility of proving these elements is made clear.

So Ordered by the Tribunal, New York, New York, June 11, 2013.


_____
Caleb Fowler, Esq., Arbitrator


_____
Jerold Oshinsky, Esq., Arbitrator


_____
Abraham D. Sofaer, Esq., Umpire