**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HDI GLOBAL SE, f/k/a HDI-GERLING
INDUSTRIE VERSICHERUNG AG,

$\hspace{4cm}$ Petitioner,

$\hspace{2cm}$ -against-

PHILLIPS 66 COMPANY,

$\hspace{4cm}$ Respondent.

No. 1:20-cv-00631

---

**PHILLIPS 66 COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR ORDER CONFIRMING ARBITRATION AWARD**

---

**REED SMITH LLP**

John N. Ellison
Richard P. Lewis
599 Lexington Avenue
New York, NY 10022
T:  (212) 521-5400
F:  (212) 521-5450
jellison@reedsmith.com
rlewis@reedsmith.com

*Of Counsel:*
Shruti D. Engstrom
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T:  (215) 851-8100
F:  (215) 851-1420
sengstrom@reedsmith.com

Dated:  February 14, 2020

**<u>TABLE OF CONTENTS</u>**

Contents

I.    INTRODUCTION ......................................................................................................... 1

II.   SUMMARY OF ARGUMENT ..................................................................................... 3

III.  STATEMENT OF FACTS ............................................................................................ 5

  A.  The Gerling Insurance Policy ................................................................................. 5

  B.  The Underlying MTBE Claims ............................................................................... 6

  C.  The Arbitration ....................................................................................................... 8

    1.  The Arbitrators and Arbitration Agreement .................................................... 8

    2.  The Scope of the Arbitration ............................................................................ 9

IV.  STANDARD OF REVIEW ......................................................................................... 14

  A.  Review of an Arbitration Award Is Permissible Only in Extremely Limited
      Circumstances. ...................................................................................................... 14

  B.  Likewise, the Grounds for Overturning an Arbitration Award Are Extremely Limited. .. 15

    1.  Manifest Disregard of Law ............................................................................. 16

    2.  Manifest Disregard of Contract ...................................................................... 17

V.   ARGUMENT ............................................................................................................... 18

  A.  Even if Manifest Disregard of Contract is a Basis for Vacatur, the Panel Did Not
      Manifestly Disregard the Gerling Policy in Ruling that the Liability Faced by Tosco Fell
      Within the Product Liability Exception to the Pollution Exclusion. ................................ 18

  B.  Gerling Failed To Establish the Requisite Components of Manifest Disregard of the Law.
      ................................................................................................................................ 20

  C.  The Court Should Confirm and Enter Judgment Upon The Third Partial Final Award.... 23

VI.  CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*,
   274 F.2d 805 (2d Cir. 1960).......................................................................................22

*B.L. Harbert Int'l, LLC v. Hercules Steel Co.*,
   441 F.3d 905 (11th Cir. 2006) .................................................................................3, 23

*Beijing Shougang Mining Inv. Co. Ltd. v. Mongolia*,
   No. 17 Civ. 7436(ER), 2019 WL 624229 (S.D.N.Y. November 25, 2019) ..............24

*City of New York v. Amerada Hess Corp.*,
   04-CV-3417, S.D.N.Y., .............................................................................................11

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006).......................................................................................24

*Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003)..........................................................................5, 16, 20, 21

*Ecopetrol S.A. v. Offshore Exploration and Production LLC*,
   46 F. Supp.3d 327 (S.D.N.Y. 2014).........................................................................24

*First Capital Real Estate Invs., L.L.C. v. SDDCO Brokerage Advisors, LLC*,
   355 F. Supp. 3d 188 (S.D.N.Y. 2019).......................................................................23

*First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food
   Employees Union Local 338*,
   118 F. 3d 892 (2d Cir. 1997).....................................................................................17

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)...................................................................................................14

*Frazier v. CitiFin. Corp.*,
   604 F.3d 1313 (11th Cir. 2010) ...................................................................................3

*Giller v. Oracle USA, Inc.*,
   No. 11 Civ. 02456(JGK), 2012 WL 467323 (S.D.N.Y. Feb. 14, 2012), *aff'd*,
   512 F. App'x 71 (2d Cir. 2013) .................................................................................22

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008)...................................................................................................23

*Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*,
   950 F.2d 95 (2d. Cir. 1991).......................................................................................17

*Hygrade Operators, Inc. v. Local 333, United Marine Div.*,
   945 F.2d 18 (2d. Cir. 1991)............................................................................17

*Ibar Ltd. v. Am. Bureau of Shipping*,
   92 F. App'x 820 (2d Cir. 2004) ......................................................................4

*Jock v. Sterling Jewelers Inc.*,
   646 F.3d 113 (2d Cir. 2011)...........................................................................17

*Local 1199, Drug, Hosp., Health Care Employees Union v. Brooks Drug Co.*,
   956 F.2d 22 (2d Cir. 1992).............................................................................17

*In re Marine Pollution Serv., Inc.*,
   857 F.2d 91 (2d Cir. 1988).............................................................................17

*Metallgesellschaft A.G., v. M/V Capital Constante*,
   790 F.2d 280 (2d Cir. 1986)...........................................................................24

*In re: Methyl Tertiary Butyl Ether* (*MTBE*) *Prods. Liab. Litig.*,
   447 F. Supp. 2d 289 (S.D.N.Y. 2006).............................................................7

*In re: Methyl Tertiary Butyl Ether* (*MTBE*) *Prods. Liab. Litig.*,
   591 F. Supp. 2d 259 (S.D.N.Y. 2008).............................................................7

*In re: Methyl Tertiary Butyl Ether* (*MTBE*) *Prods. Liab. Litig.*,
   67 F. Supp. 3d 619 (S.D.N.Y. 2014)...............................................................8

*New Jersey Dept. of Envt'l Prot. v. Atlantic Richfield Co.*,
   No. 08 Civ. 00312, United States District Court, ........................................12

*Orange County Water Dist. v. Unocol Corp.*,
   No. 04 Civ. 4968, United States District Court, ..........................................12

*Oxford Health Plans LLC v. Sutter*,
   569 U.S. 564 (2013)................................................................................15, 16

*Porzig v. Dresdner, Kleinwort, Benson, N. Am LLC*,
   497 F.3d 133 (2d Cir. 2007)...........................................................................20

*Rocket Jewelry Box, Inc. v. Noble Gift Packaging*,
   157 F.3d 174 (2d Cir. 1998)...........................................................................24

*Sanluis Dev., L.L.C. v CCP Sanluis, L.L.C.*,
   556 F. Supp. 2d 329 (S.D.N.Y. 2008).............................................................24

*Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*,
   668 F.3d 60 (2d Cir. 2012).............................................................................14

*Sempra Energy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   No. 06 Civ. 6107(HB), 2006 WL 3147155 (S.D.N.Y. Oct. 31, 2006) ..................................22

*South Tahoe PUD v. ARCO*,
   No. 999120 (Cal. Super. San Francisco County) ......................................................................7

*State of Vermont v. Atlantic Richfield Co.*,
   No. 340-6-14 .........................................................................................................................12

*T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
   592 F.3d 329 (2d Cir. 2010) ........................................................................................ *passim*

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
   484 U.S. 29 (1987) ............................................................................................................14, 15

*Wallace v. Buttar*,
   378 F.3d 182 (2d Cir. 2004) ................................................................................................16

*Weiss v. Sallie Mae, Inc.*,
   939 F.3d 105 (2d Cir. 2019) ................................................................................................16

*Wells Fargo Advisors LLC v. Tucker*,
   373 F. Supp. 3d 418 (S.D.N.Y. 2019) ..............................................................................23, 24

*Westerbeke Corp. v. Daihatsu Motor Co.*,
   304 F.3d 200 (2d Cir. 2002) ........................................................................................ *passim*

## Statutes

9 U.S.C. § 9 ..................................................................................................................................1, 23

9 U.S.C. § 10(a) ..............................................................................................................................15

## I.   __INTRODUCTION__

Petitioner, HDI Global SE ("Gerling") asks this Court to take the extraordinary step of vacating an arbitration award based upon an arbitration panel's (the "Panel") "manifest disregard of the parties' written agreement" and "manifest disregard of the law" under Section 10(a)(4) of the Federal Arbitration Act ("FAA").  (Gerling Memorandum of Law in Support of the Motion to Vacate the Third Partial Final Award ("Gerling Mem.") at 13.)  Gerling demonstrates no more than disagreement with the Panel's interpretation of an insurance contract.  Vacatur on these grounds is only permissible in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent," which under this standard "essentially bars review of whether an arbitrator misconstrued a contract." *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

Gerling's unwarranted and inadequate attack on the Panel's decision is particularly unavailing given the august make-up of the Panel: retired Southern District of New York Judge Abraham D. Sofaer as chair, with panelists with decades of insurance law experience Jerold Oshinsky and Caleb Fowler.[1]

Gerling's Motion fails to meet the very high burden required for such relief and should be summarily rejected.  As Gerling cannot meet its burden for vacatur, Tosco applies to this Court for an order confirming the Panel's Arbitration Award of October 27, 2019 in Tosco's favor.  9 U.S.C. § 9.

---

[1] In addition to sitting on the bench in the Southern District of New York from 1979-1985, Judge Sofaer served as a legal advisor to the U.S. Department of State where he represented the United States in international arbitrations and before the International Court of Justice, has practiced law at respected law firms and is a Senior Fellow at the Hoover Institution at Stanford University.  Mr. Oshinksy and Mr. Fowler are attorneys each with over 35 years of experience in complex insurance coverage issues.

By way of background, this Arbitration involves insurance coverage under an excess liability insurance policy sold by Gerling (the "Gerling Policy") to Phillips 66 Company's ("P66") predecessor Tosco Corporation ("Tosco").  Tosco sought coverage from Gerling for a series of product liability lawsuits brought against it and other refiners and distributors of gasoline containing a government-mandated oxygenate, methyl butyl ethylene ("MTBE"), largely in jurisdictions around the perimeter of the United States (the "Underlying MTBE Claims").  One of the two dozen defenses raised by Gerling was the application of a Pollution Exclusion in the Gerling Policy, which contained a Product Liability Exception.

The arbitration between Tosco and Gerling consisted of significant discovery, hundreds of pages of briefing, and multiple hearings over three phases beginning in 2013.  In a decision early in the arbitration in June 2013, the Panel made a broad ruling about the applicability of the Product Liability Exception which was the lodestar for the Panel and the parties for the next six plus years of arbitration.[2]  Operating under this ruling the Panel determined coverage for successive groups of Underlying MTBE Claims in orders referring to Phase I (September 16, 2014), Phase II (August 24, 2017) and Phase III (October 27, 2019).  Contrary to Gerling's assertion, the rulings in Phase I and Phase II consistently relied on the lodestar principle of Order No. 1. Gerling did not file any Motion to Vacate the orders in Phase I and Phase II, but now comes to this Court to object to the same application of Order No. 1 in Phase III.

This is a desperate act of last resort, a "hail Mary" pass.  In the Second Circuit, the court's inquiry under §10(a)(4) "focuses on whether the arbitrators had the power, based on the parties' submissions or arbitration agreement, to reach a certain issue, not whether the arbitrators correctly

---

[2] *See* Ellison Decl., ¶ 7, Ex. D, June 11, 2013 Order ("Order No. 1"), at 30-31.  The exhibits are attached to the Feb. 14, 2020 Declaration of John N. Ellison ("Ellison Decl."), filed concurrently with this brief.

decided that issue." *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d at 346. Respectfully, this should end the inquiry for the Court since even a cursory a reading of the parties' arbitration agreement and the Panel's Third Partial Final Award will demonstrate the frivolity of Gerling's Petition, and the potentially-sanctionable conduct of Gerling.[3]

## II.   SUMMARY OF ARGUMENT

Gerling's argument that the Panel's Third Partial Final Award was inconsistent with Order No. 1 makes no sense.  In a reasoned decision that clearly indicates the Panel considered the plain language of the Gerling Policy, the Panel simply applied the Product Liability Exception to the Pollution Exclusion, something it was specifically authorized to do under the parties' arbitration agreement.  Under principles of contract interpretation, the Exception narrows the Exclusion. Gerling does not and cannot explain how it could work otherwise, or how the Panel nullified any portion of the Gerling Policy.  As a matter of law, Gerling's position is wrong and does not meet the standard for vacatur.

Regardless of how the Panel's order is interpreted, Gerling's Petition To Vacate fails for four reasons.  First, as noted above, the Panel did not exceed its authority under §10(a)(4) of the FAA because the parties' arbitration agreement authorized the Panel to determine the applicability of the Pollution Exclusion.  *See T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d at 346 (the court's inquiry under §10(a)(4) "focuses on whether the arbitrators had the power, based

---

[3] *See B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913-14 (11th Cir. 2006) (*abrogated on other grounds by Frazier v. CitiFin. Corp.*, 604 F.3d 1313 (11th Cir. 2010) ("When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken . . . .  Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions.")

on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *See also, Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002) (same).

Second, the Panel did not nullify any part of the Pollution Exclusion in manifest disregard of the parties' contract. The Panel determined that the liability faced by Tosco fell within Paragraph 2, the Product Liability Exception to the Pollution Exclusion, which expressly states the circumstances in which Paragraph 1 does not apply. Gerling ignores this obvious point, which is fatal to Gerling's Petition. Gerling is wrong, but this is beside the point: Gerling cannot use vacatur as a means to relitigate the applicability of the Product Liability Exception to Tosco's claim. Disagreement over the Panel's interpretation of the insurance policy cannot justify vacatur. *T.Co. Metals, LLC*, 592 F.3d at 339. (with respect to contract interpretation, the standard for vacatur "essentially bars review of whether an arbitrator misconstrued a contract.")

Third, Gerling's reliance on manifest disregard of the contract is also misplaced since it is questionable whether manifest disregard of the contract is even a legitimate basis for vacatur. *See Ibar Ltd. v. Am. Bureau of Shipping*, 92 F. App'x 820, 822 (2d Cir. 2004) (rejecting petitioner's "essence of the agreement" argument as a basis for vacatur and stating "[t]his Court has recently expressed doubts as to whether the 'essence of the agreement' doctrine extends beyond arbitration awards issued under collective bargaining agreements").

Fourth, the Panel's decision to apply the Product Liability Exception was not based on public policy or economic efficiency. While the Panel referenced public policy as additional support for its decision, the ruling was based on an application of the evidence to the language of the Product Liability Exception, language it had interpreted for the parties in June 2013 and which interpretation it previously applied in September 2014 and August 2017. In short, the Panel's

ruling in Phase III on October 27, 2019 was entirely consistent with, not in manifest disregard of, New York law and the law of the case, and must be given strong deference. *Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388-389 (2d Cir. 2003) ("It is well established that courts must grant an arbitration panel's decision great deference. … Our review under the doctrine of manifest disregard is severely limited. … It is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare.")

III.    **STATEMENT OF FACTS**

A.    **The Gerling Insurance Policy**

The Gerling Policy, an excess liability policy, provides third-party liability coverage above the attachment point for, *inter alia*, sums Tosco becomes obligated to pay as damages on account of property damage resulting from an occurrence or integrated occurrence. Ellison Decl., ¶ 5, Ex. C at PSXGER 00004146.

Endorsement 5 of the Gerling Policy, the Blended Pollution Endorsement, deletes and replaces the pollution exclusion in Section IV(k) of the Gerling Policy. *Id.* at PSXGER 00004185. While Paragraph 1 of the Pollution Exclusion in Endorsement 5 generally excludes from coverage liability for property damage arising out of the discharge of "pollutants" caused by the policyholder or any other entities' activities, Paragraph 2 of Endorsement 5 carves out three exceptions to Paragraph 1:

**BLENDED POLLUTION ENDORSEMENT**

This Policy is amended in that Exclusion (k) is deleted and replaced as follows:

(1)    (a)    to any liability for Personal Injury, Property Damage or Advertising Injury arising out of the discharge of pollutants into or upon land or real estate, the atmosphere, or any watercourse or body of water whether above or below ground or otherwise into the environment, or

(b)    to liability, loss, cost or expense of any Insured or others arising out of any direction or request, whether governmental or otherwise, that

any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

This Exclusion (k) applies whether or not such discharge of pollutants:

(i)     Results from the Insured's activities or the activities of any other person or entity;

(ii)    is sudden, gradual, accidental, unexpected or unintended; or

(iii)   arises out of or relates to industrial operations or the waste or by-products thereof.

(2)     **Paragraph (1) of this [Pollution Exclusion]** *does not* **apply to**:

(a)      **product pollution liability**; or

(b)     liability of the Insured for Personal Injury or Property Damage caused by an intentional discharge of pollutants solely for the purpose of mitigating or avoiding Personal Injury or Property Damage which would be covered by this Policy; or

(c)     liability of the Insured for Personal Injury or Property Damage caused by a discharge of pollutants which is not expected or intended and which results solely from a Covered Pollution Peril provided that such discharge commences upon a date (i.e., a specific day) which can be determined and which is subsequent to the policy Inception Date.

*Id* (emphasis added). Thus, Paragraph (2)(a) of the Gerling Policy provides an exception for "product pollution liability," a term that is not otherwise defined in the Gerling Policy. The meaning of "product pollution liability" was litigated and resolved by the Panel in its initial ruling in June 2013, discussed in §III(C)(2)(a), *infra*, in which the Panel adopted Gerling's reading.

## B.  The Underlying MTBE Claims

The Underlying MTBE Claims were brought beginning in the late 1990s primarily by government entities and private water companies (the "Underlying Plaintiffs") against Tosco (and others) for threatened or actual contamination of groundwater and drinking water caused by the gasoline additive MTBE. The Underlying MTBE Claims alleged that gasoline containing MTBE was a defective product and that Tosco (and other oil and gas companies), as a designer and manufacturer of gasoline containing MTBE, both designed the defective product and failed to warn

customers that the characteristics of the gasoline were different than other gasoline.  In addition to claims for damages on product liability grounds against refiners like Tosco, the Underlying MTBE Claims also included claims against gas station owners for liability based on gasoline leaks or spills into the ground.  Tosco originally gave notice to its insurance companies, including Gerling, of the individual lawsuits as they were filed, but under the 1998-1999 Gerling Policy, elected to batch the Underlying MTBE Claims as an Integrated Occurrence pursuant to Section V(d).

Gerling accepted this election of an Integrated Occurrence.  By 2003, hundreds of Underlying MTBE Claims from across the country had been filed.  Most of the cases were consolidated into multi-district litigation before Judge Scheindlin in the Southern District of New York ("MDL-1358").

Many of the Underlying MTBE Claims, including the first one taken through trial (by attorney Duane Miller) in *South Tahoe PUD v. ARCO*, No. 999120 (Cal. Super. San Francisco County), relied on the standard proof of causation in a product liability case, *i.e.*, proving which refiners sold the allegedly defective product to which customers in the relevant marketplace who in turn allowed the gasoline to injure the water supplies.  However, as cases developed in MDL-1358, Judge Scheindlin recognized that these proofs would not be available in all cases, and issued rulings setting forth theories of alternative causation which could be employed, including showing a refiner's market share at the time and place of injury.  *In re: Methyl Tertiary Butyl Ether* (*MTBE*) *Prods. Liab. Litig.*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006); *In re: Methyl Tertiary Butyl Ether* (*MTBE*) *Prods. Liab. Litig.*, 591 F. Supp. 2d 259, 276 (S.D.N.Y. 2008).    Judge Scheindlin reiterated these rulings in 2014:

> As I ruled previously, as a general matter, the plaintiffs have 'the burden to show that the defendants' products were at the stations at issue when the releases occurred.'  Therefore, the plaintiffs must provide 'reasonably probable' evidence of delivery ….   However, under the commingled products theory of proof …

plaintiffs may be able to prove causation even if they cannot identify the exact defendant who caused the injury …. It follows that this theory is not available to plaintiffs if they can prove direct causation.

*In re: Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 67 F. Supp. 3d 619, 628-29 (S.D.N.Y. 2014). Accordingly, the Underlying MTBE Claims consisted of product liability claims in which the Underlying Plaintiffs relied on traditional, direct causation theories, and alternatively, a commingled products theory or market share theory if proofs of direct causation were not available.

### C. The Arbitration

1. <u>The Arbitrators and Arbitration Agreement</u>

   a)   The Arbitration Panel

Gerling will not dispute that the three-member Panel was highly qualified to judge the arbitration. Tosco appointed Jerold Oshinsky, Esq., to serve as an arbitrator, and Gerling appointed Caleb Fowler, Esq. Former Judge Abraham Sofaer of the United States District Court in the Southern District of New York was selected to serve as the Panel's Chair.

   b)   The Issues Before the Arbitration Panel Under the Parties' Agreement

By agreement dated November 8, 2011, Tosco and Gerling amended the Arbitration provision of the Gerling Policy with the Confidential Agreement for Alternative Dispute Resolution of MTBE Claims ("Arbitration Agreement"). The Arbitration Agreement set forth a list of substantive issues to be decided by the Panel, including,

> Whether (and if so to what extent) the [Ultimate Net Loss] is excluded by (i) the Known Occurrence Exclusion Endorsement or (ii) the [Pollution Exclusion].

Ellison Decl., ¶ 2 Ex. A § 15(d). These issues were reiterated in the Terms of Reference created by the parties in February 2013 pursuant to the Arbitration Agreement (hereinafter, "the List of

Issues").  Gerling is not disputing that the Panel had the authority to construe the Pollution Exclusion.

### 2. The Scope of the Arbitration

Tosco presented its Statement of Claim on January 25, 2013 and Gerling presented its Statement of Defense and Counter Statement of Claim on February 15, 2013.  In connection with the List of Issues, Tosco filed several motions for determination of preliminary legal issues on March 29 2013, which as discussed below, were decided on June 11, 2013.  From April 2013 onwards, the parties engaged in significant written discovery and document discovery about the Underlying MTBE Claims, including the Underlying MTBE Claims that are the subject of this Petition to Vacate.

#### a) Preliminary Legal Ruling in June 2013

In connection with its Pollution Exclusion defense, Gerling asserted that it was Tosco's burden to demonstrate that the Product Liability Exception applied to its liability in the Underlying MTBE Claims, and if it did apply, that Tosco's liabilities arose out of the "end use" of its products. Gerling also asserted that the Pollution Exclusion excluded any of Tosco's liability in respect of MTBE that leaked from premises owned, rented or controlled by Tosco or owned by others trading under its name, regardless of whether Tosco is allegedly liable as a producer or as a retailer of gasoline containing MTBE.

Tosco filed an early motion to determine the applicability of the Pollution Exclusion to the Underlying MTBE Claims.  Gerling opposed, arguing the Pollution Exclusion applied to bar all coverage in the Underlying MTBE Claims.  The Panel ruled on this issue on June 11, 2013 in Order No. 1.  First, the Panel accepted Gerling's argument that the term "product pollution liability," which was undefined, should nonetheless be interpreted in light of the definition of "product liability" in Section III(n) of the Gerling Policy.  Ellison Decl., ¶ 8, Ex. D at 30.  Next,

based on that definition, the Panel determined that Tosco had to prove that its liabilities met three requirements to be excepted under the Product Liability Exception in Paragraph 2: (1) the liability had to include injury or damage "arising out of the end-use" of Tosco's goods and products; (2) the use had to occur "after possession of such goods or products has been relinquished to others" by Tosco; and (3) the use had to occur "away from premises owned, rented or controlled" by Tosco. *Id*. at 30-31. Under New York law, "end use" and "arising out of" were meant "to include the full range of end uses of the completed product (MTBE treated gasoline) . . . ." *Id*. at 32. The Panel ruled:

> in general, and subject to the specific evidence in this matter, that liability suffered by Tosco arising from end uses of MTBE gasoline would normally be deemed to fall within the exception so long as they occur <u>after Tosco has relinquished possession of the product and the product is no longer on property Tosco owns, rents or controls</u>.

*Id*. at 33 (emphasis added). In short, while Paragraph 1 applied to discharges of pollutants at the hands of third parties, Paragraph 2 excepted Product Liability for discharges of Tosco's product by third parties.

Gerling never sought reconsideration of this order on the basis that it nullified any portion of the Gerling Policy or, for that matter, on any other basis. Indeed, this order served as the foundation on which the parties litigated the applicability of the Pollution Exclusion and the Product Liability Exclusion in all three phases of the arbitration.

b)      Phase I

The parties conducted a seven day hearing in April 2014, and a closing argument hearing on June 19, 2014, which culminated in the First Partial Final Award ("PFA") dated September 16, 2014. Ellison Decl. ¶ 10. The PFA resolved all the List of Issues as to the Underlying MTBE Claims that were settled in four global settlements and determined "the allocation of liability and available insurance coverage for the amounts paid in four Global Settlements …." Ellison Decl.

¶ 8, Ex. E at 2.  This included the application of the Pollution Exclusion, as it had been construed by the Panel in Order No. 1.

The settlements that were the subject of the PFA included almost 80% of the cases consolidated into MDL-1358, such as the *City of New York v. Amerada Hess Corp.,* 04-CV-3417, S.D.N.Y., which plead both product liability claims and leaker/discharger liability claims against defendants like Tosco.[4]  In large part, the Underlying Plaintiffs in these cases pursued alternative theories of liability, thus despite allegations about discharge of pollutants in these lawsuits, the Panel did not exclude liability on the basis of the Pollution Exclusion because the evidence did not support application of the Pollution Exclusion to Tosco's liability, i.e., the liability at issue was product liability.[5]  Gerling did not seek to vacate the First PFA even though the Pollution Exclusion was at issue in Phase I.

c)      Phase II

Phase II, which focused on the remaining settled Underlying MTBE Claims, began subsequent to the PFA, included significant discovery, and a hearing on September 26, 2016, culminating in the Second PFA dated August 24, 2017.  Ellison Decl. ¶12.  The Second PFA also resolved the List of Issues as to those cases, including the application of the Pollution Exclusion, as it had been construed by the Panel in Order No. 1.

---

[4] *See* Ellison Decl. ¶ 9, Ex. F.

[5] Tosco does not attach the PFA or the Second PFA to this opposition because the Arbitration Agreement and separate Confidentiality Agreement bind the parties to keep the awards confidential. Ellison Decl. ¶13. Gerling disregarded this.  In addition, both awards reference privileged documents that were exchanged during the course of the arbitration.  Accordingly, if the Court requires filing of the PFA or Second PFA in order to rule on the Petition to Vacate, Tosco respectfully requests leave to file an Application for an Order to File Documents Under Seal.

Phase II addressed cases which Tosco settled individually, as opposed to globally with a group of defendants, including cases such as *South Tahoe*.[6]  In large part, the Phase II Underlying MTBE Claims were brought by attorney Duane Miller, and like the Phase I Underlying MTBE Claims, alleged both product liability claims and discharger liability claims against the defendants. Unlike the Phase I cases, the Underlying Plaintiffs in the Phase II cases relied on traditional causation theories to prove the product liability claims — tracing gasoline from a refiner to a gas station.

Gerling correctly contends that Phase II dealt with settlements on the basis that Tosco's liability was predicated on the introduction of "an allegedly defective product into various markets" and "the Pollution Exclusion was on this basis not deemed to apply." (Gerling Mem. at 9.)  It was deemed not to apply because the evidence demonstrated that the Product Liability Exception applied to the liability, and thus Tosco was awarded indemnity and expenses in the amount of $51,717,051.92.  Ex. E at 3.  Again, Gerling did not seek to vacate the Second PFA.

d)      Phase III

Phase III began after Tosco settled cases brought by the State of New Jersey, the Orange County Water District and the State of Vermont.[7]  *New Jersey* and *Orange County Water District* had been remanded from MDL-1358 and were the subject of discovery in Phase I and Phase II. Phase III consisted of discovery on the three recently settled cases, a two-day hearing on July 16

---

[6] *See* Ellison Decl. ¶ 11, Ex. G.

[7] *Orange County Water Dist. v. Unocol Corp.*, No. 04 Civ. 4968, United States District Court, S.D.N.Y.; *New Jersey Dept. of Envt'l Prot. v. Atlantic Richfield Co.*, No. 08 Civ. 00312, United States District Court, S.D.N.Y,; *State of Vermont v. Atlantic Richfield Co.*, No. 340-6-14.  *See* Ellison Decl. ¶¶ 15-17, Exs. H-J, respectively.

and 17, 2019, and a Third PFA dated October 27, 2019.  Like Phase I and Phase II, the Third PFA

resolved the List of Issues as to those cases.  Ellison Decl. ¶18.

Of the Phase III cases, *New Jersey* and *Orange County* were brought by attorney Duane

Miller, the same attorney that brought *South Tahoe* and the majority of the Phase II Underlying

MTBE Claims.  These cases, which were consolidated into MDL-1358, made virtually identical

allegations to the Phase I and Phase II Underlying MTBE Claims.  Like the Phase II Underlying

MTBE Claims, Mr. Miller relied on traditional tracing causation theories to prove the cases for the

Underlying Plaintiffs.

As in Phase I and Phase II, after requiring Tosco to provide Gerling with extensive

discovery, the Panel permitted the parties in Phase III to present opening submissions, witness

statements, and oral arguments.  The Panel also gave the parties an opportunity to cross-examine

witnesses.   Gerling did not present any witnesses and chose not to cross-examine Tosco's

witnesses.  *Id.*

In Phase III, Gerling argued in part, that the Product Liability Exception in Paragraph 2

was inconsistent with and thus somehow over-ridden by Paragraph 1 which barred pollution

resulting "from the Insured activities or the activities of any other person …."  Ex. E at 57-58.

Gerling also re-argued the meaning of "end-use," contending that Tosco failed to present any

evidence that it relinquished possession or control of the leaked MTBE gasoline, and argued that

the *New Jersey* complaint alleged that Tosco had owned and/or exercised control over sites at

which spills occurred.  *Id*.  Tosco argued that the Pollution Exclusion does not apply to "product

pollution liability" as determined by the Panel in Order No. 1.  *Id*. at 59.

After considering these arguments, the Panel first reaffirmed from Order No. 1 that "the

combination of 'arising out of' and 'end use' includes the full range of end uses of the completed

product, including the sale and transfer by a refiner of MTBE gasoline to a wholesaler." *Id*. Next, the Panel explained that the "[Pollution] Exclusion's application to polluters, however, is part of the Pollution Exclusion and not part of the [Product Liability] Exception, which exempts some forms of pollution potentially covered by the [Pollution] Exclusion." *Id*. at 60. The Panel also found that **"[n]o evidence has been introduced** to support the proposition that Tosco exercised control over any of the third-party site owners *Id*. (emphasis added). Accordingly, "[i]t would be inconsistent with the purpose of the exception to impose liability for pollution from such sites on Tosco on a record that includes ***no evidence*** of any authority or exercise of control by Tosco over any possibly connected third-party polluter." *Id*. at 60-61 (emphasis added). Thus, the Panel correctly concluded that the Pollution Exclusion did not apply to Tosco's liabilities based on the language of the Gerling Policy — the Product Liability Exception — <u>and</u> the evidence presented in Phase III.

## IV.   <u>STANDARD OF REVIEW</u>

### A.   **Review of an Arbitration Award Is Permissible Only in Extremely Limited Circumstances**.

Under the Federal Arbitration Act ("FAA"), courts may vacate an arbitrator's decision "only in very unusual circumstances." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). The role of the court in a judicial review of an arbitration is extremely limited; it is not an occasion for *de novo* review. *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012). The standard of review is so narrow that courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). While an "arbitrator may not ignore the plain language of the contract . . . [,] as long as the arbitrator is even arguably construing or applying the contract and

acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *Id.* at 38.

**B.     Likewise, the Grounds for Overturning an Arbitration Award Are Extremely Limited.**

Under the FAA, a court may vacate an arbitration award upon the application of a party to the arbitration:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause show, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Here, the only ground under which Gerling seeks relief is § 10(a)(4), arguing that the Panel drafted the Third PFA in manifest disregard of the Gerling Policy and in manifest disregard of the law.  Under either argument, Gerling "bears a heavy burden."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  The Court's inquiry under § 10(a)(4) "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002).

The Court can summarily dispense with Gerling's petition under this standard alone.  The Arbitration Agreement explicitly authorized the Panel to determine "[w]hether (and if so to what extent) the [Ultimate Net Loss] is excluded by … (ii) the [Pollution Exclusion]."  Ex. A § 15(d).

- 15 -

The Panel made this determination under Order No. 1, and two other times in the PFA and Second PFA. And since Gerling knew the Panel had the authority to make this determination, it never challenged that authority previously. If the Court chooses, it can reject Gerling's petition on this basis alone.

            1.      Manifest Disregard of Law

Review of an arbitral award based on a manifest disregard of the law is a "severely limited doctrine." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). "A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (*quoting T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)). "It is not enough . . . to show that the [arbitrator] committed an error — or even a serious error." *Oxford Health Plans,* 569 U.S. at 569. Because the parties "bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of this Court's view of its (de)merits." *Id.* (internal citations and quotations omitted).

"So the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* at 570; *see also T.Co. Metals,* 592 F.3d at 339 ("That impropriety has been interpreted clearly [to] mean[ ] more than error or misunderstanding with respect to the law . . . or an arguable difference regarding the meaning or applicability of laws urged upon an arbitrator. Rather, the award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached.") (internal citations and quotations omitted). This Court's review on this basis is "only for a *clear demonstration that the panel **intentionally defied the law**.*" *Duferco Int'l*

*Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 392-93 (2d Cir. 2003) (emphasis added). To that end, Gerling must demonstrate: (1) "that the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) that "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011) (internal citations and quotations omitted).

### 2. Manifest Disregard of Contract

Gerling's manifest disregard of contract argument, which courts have referred to as the "essence of the agreement" doctrine, is not derived from the FAA, but was originated in the context of the standard of review of an arbitration award issued under a collective bargaining agreement pursuant to § 301 of the Labor Management Relations Act of 1947. *Westerbeke*, 304 F.3d at 220-221. Traditionally, the Second Circuit has "confined the 'essence of the agreement' doctrine to review of arbitration awards issued under collective bargaining agreements." *Id*. at 221.[8] As the "essence of the contract" doctrine has been criticized as "an additional non-statutory ground for vacatur," it may not be legitimate basis upon which to grant vacatur. *Id*. at 222. Indeed, even if it is applicable, given the heightened standard of deference afforded arbitration awards, vacatur on this basis would be appropriate "only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." *Westerbeke*, 304 F.3d at 222.

---

[8] *Citing First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118 F. 3d 892, 895-896 (2d Cir. 1997); *Local 1199, Drug, Hosp., Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992); *Hygrade Operators, Inc. v. Local 333, United Marine Div.*, 945 F.2d 18, 22 (2d. Cir. 1991); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 950 F.2d 95, 98 (2d. Cir. 1991); *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988).

## V.     **ARGUMENT**

### A.     **Even if Manifest Disregard of Contract is a Basis for Vacatur, the Panel Did Not Manifestly Disregard the Gerling Policy in Ruling that the Liability Faced by Tosco Fell Within the Product Liability Exception to the Pollution Exclusion**.

Gerling does not and cannot demonstrate how the Third PFA contradicts an express and unambiguous term of the Gerling Policy, or so far departs from the terms of the Gerling Policy that the Third PFA is not even arguable derived from the Gerling Policy.  Quite the contrary, the narrowing of the exclusion that results from the application of the Product Liability Exception to the Pollution Exclusion is the very essence of what this aspect of the Gerling Policy was intended to do — carve product liability out of the exclusion.  As best we can discern from its papers, Gerling's argument is that the Panel erred:

> by declaring that Respondent's settlement of its pollution liabilities would not be excluded under the Pollution Exclusion because the settlements "released only claims based on Tosco's product liability for manufacturing MTBE gasoline traced to third parties responsible for the pollution alleged," rewrote the Pollution Exclusion by nullifying that portion of it which provided that any liability that the Respondent faced for pollution was excluded, "whether or not such discharge of pollutants: (i) results from the Insured's activities or the activities of any other person or entity."

(Gerling Mem. at 14).

However, this is not a nullification of the contract.  It is simply an interpretation and application of the Product Liability Exception to the Pollution Exclusion.  Paragraph 1 of the Pollution Exclusion bars liability for discharges of pollutants in possession of Tosco or third parties.  Paragraph 2, the Product Liability Exception, excepts from Paragraph 1's exclusion liability stemming from discharges of Tosco's product in the possession of third parties.

Specifically Gerling complains that the Panel's construction of the Pollution Exclusion nullified Paragraph 1(i) which applies the Pollution Exclusion "whether or not" the discharge of

pollutants "results from the Insured's activities of the activities of any other person or entity . . . ." (Gerling Mem. at 14).

But Gerling ignores that the Panel came to the conclusion precisely because that is what is called for under the Product Liability Exception — the exception narrows the exclusion.  The Product Liability Exception plainly states "Paragraph (1) of this [Pollution Exclusion] does not apply to:  (a) product pollution liability . . . ."  In applying the Product Liability Exception, the Panel first agreed with Tosco that the meaning of the Product Liability Exception had been previously determined in Order No. 1 (six and one-half years prior to the Third PFA).  Ex. E at 59.  Second, the Panel correctly found Paragraph 1 of the Pollution Exclusion's "application to polluters, however, is part of the Pollution Exclusion and not part of the [Product Liability] Exception, which exempts some forms of pollution potentially covered by the [Pollution] Exclusion.  *Id.* at 60.  Third, the Panel found "[n]o evidence [was] introduced to support the proposition that Tosco exercised control over any of the third-party site owners … that New Jersey might have been able to connect to Tosco MTBE gasoline and were responsible for pollution."

 Thus, the Panel concluded that, "on a record that includes no evidence of any authority or exercise of control by Tosco over any possibly connected third-party polluter," Gerling had not presented evidence that the Product Liability exception did not apply.  *Id*. at 60-61.  It is telling that Gerling does not cite to any actual facts or policy language contradicting the Panel's conclusion.  Gerling cannot, because the Panel made the right decision.

Assuming manifest disregard of contract is still a basis for vacatur in the Second Circuit in this situation, Gerling does not even attempt to justify vacating the Panel's ruling under the high standard  — i.e., Gerling does not show that the Panel's ruling "contradicts an express and unambiguous term of the contract" or that it "so far departs from the terms of the agreement that

it is not even arguably derived from the contract." *Westerbeke*, 304 F.3d at 222.  Gerling merely

argues that the decision was inconsistent with Order No. 1 by quoting the Panel's public policy

considerations out of context.  The Panel's decision was, in fact, entirely consistent with Order

No. 1 and the language of the Gerling Policy.  The Panel plainly stated as much:

> The Board reaffirms its view that the combination of "arising out of" and "end use"
> includes the full range of end uses of the completed product, including the sale and
> transfer by a refiner of MTBE gasoline to a wholesaler.  Specific proof of each
> transfer that is traced to pollution is unnecessary and impractical to require.  The
> sales and transfers that were alleged by New Jersey and accepted by Tosco as
> having involved the relinquishment of the MTBE gasoline to the wholesalers and
> other buyers, and the pollution certainly occurred away from the premises owned
> or rented by Tosco.

Ex. E at 59.  Gerling does not, and cannot, point to any express provisions of the Gerling Policy

that foreclose this result, and since the Panel's interpretation of the Gerling Policy is more than

barely colorable – in fact, it is obviously correct – there is no basis for vacatur.  *See Westerbeke*,

304 F.3d at 222-223.

### B.      Gerling Failed To Establish the Requisite Components of Manifest Disregard of the Law.

Gerling knows that its manifest disregard of the contract argument is dubious so it also tries

to argue that the Panel's ruling was a manifest disregard of the law, paying lip service to the two

requirements it must meet:  "(1) that the arbitrators knew of a governing legal principle yet refused

to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined,

explicit, and clearly applicable to the case."  (Gerling Mem. at 16, *citing Porzig v. Dresdner,

Kleinwort, Benson, N. Am LLC*, 497 F.3d 133, 139 (2d Cir. 2007).)  Notably, Gerling fails to

mention that the two-pronged standard "involves at least three inquiries."  *Duferco Int'l Steel*, 333

F.3d at 389-390.  First, this Court must "consider whether the law that was allegedly ignored was

clear, and in fact explicitly applicable to the matter before the arbitrators."  *Id*.  Second, this Court

must find "that the law was in fact improperly applied, leading to an erroneous outcome."  *Id*. at

390.   Finally, this Court must find that the arbitrators intentionally disregarded the clearly applicable governing law.  *Id*.

Gerling argues that the record (1) "shows that the Majority plainly knew of the governing legal principles regarding insurance policy construction" and (2) "yet refused to apply them in favor of their own views of public policy."  (Gerling Mem. at 16.)  The first statement is true, but the second is an incredulous charge in an arbitration where the Panel has adjudicated three phases of the parties' dispute over almost seven years, with multiple hearings, hundreds of pages of submissions, almost a dozen procedural orders, two other partial final awards, and a sixty-seven page third partial final award.  It is also false.

As to the first statement, it is true that the Panel understood the principles of insurance policy construction.  The Panel also provided the parties with full opportunity to argue the meaning of the Pollution Exclusion and the Product Liability Exception under these principles, which resulted in Order No. 1.

As to the second, Gerling selectively quotes the Panel's public policy considerations from the Third PFA, and then chooses to misstate the holding in Order No. 1.  Order No. 1 tells the parties that the definition of "product liability" in the Gerling Policy provides guidance as to the meaning of the Product Liability Exception.  Ex. D at 30-31.  This accepted Gerling's argument.  The Panel then interpreted the Product Liability Exception found that it only applies where (1) the injury arises out of end use; (2) end use occurs after the product has been relinquished by the insured; and (3) the use occurs away from premises owned, operated or controlled by the insured.  *Id*. at 31-33.

Relying only on conclusory statements, Gerling not only fails to demonstrate that the Panel misapplied the rules of insurance policy construction, it utterly fails to even bother to show the Panel reached an erroneous outcome or that the Panel intentionally disregarded the law.

Even if Gerling's claim that the Panel misapplied the governing principles of contract interpretation was correct, which it is not, Gerling's complaints do not qualify as a manifest disregard of the law. Mere "misapplication . . . of . . . rules of contract interpretation does not rise to the stature of a 'manifest disregard' of law." *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960); *see also Giller v. Oracle USA, Inc.*, No. 11 Civ. 02456(JGK), 2012 WL 467323, at *6 (S.D.N.Y. Feb. 14, 2012), *aff'd*, 512 F. App'x 71 (2d Cir. 2013) (consulting extrinsic evidence to interpret allegedly unambiguous contract term does not constitute manifest disregard of the law); *Sempra Energy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 06 Civ. 6107(HB), 2006 WL 3147155, at *2 (S.D.N.Y. Oct. 31, 2006) (arbitrator's purported failure to follow general principles of contract interpretation does not constitute manifest disregard of law). Gerling does not have a leg to stand on here, especially since the Panel did not misapply any principles of contract interpretation and ultimately, reached the right result.

In reality Gerling is unhappy now (almost seven years after Order No. 1) with the result of Phase 3 so it seeks a do-over with this Court. It is black letter law in the Second Circuit that an "arbitrator's factual findings and contractual interpretations are not subject to judicial challenge." *Westerbeke*, 304 F.3d at 214; *see also T.Co. Metals*, 592 F.3d at 339 ("With respect to contract interpretation, [the manifest disregard of the law standard] essentially bars review of whether an arbitrator misconstrued a contract."). It is clear from a review of Order No. 1 and the Third PFA that the Panel's interpretation of the Product Liability Exception as applied in the Third PFA was

consistent with its prior rulings, and was not in disregard of any law.  Gerling has been litigating this issue since 2013, but is now trying to use this Court as another stop in its litigation strategy.[9] Gerling's attempt at a do-over must be rejected.

### C.    The Court Should Confirm and Enter Judgment Upon The Third Partial Final Award.

In addition to denying Gerling's Petition to Vacate, the Court should confirm and enter judgment upon the Third Partial Final Award.  The FAA permits a party to an arbitration to apply to the United States court for the district in which an arbitral award is made for an order confirming the award, "and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  According to the Supreme Court, the language of this section is not flexible, and "unequivocally tells the courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."  *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  Section 9 of the FAA, along with Section 10, which provides the limited grounds for vacatur, substantiates "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."  *Id*.  As such, the process agreed upon between the parties and conducted by the Panel, along with the Panel's award must be given "strong deference."  *Wells Fargo Advisors LLC v. Tucker*, 373 F. Supp. 3d 418, 423 (S.D.N.Y. 2019).

Moreover, "[d]ue to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter."  *First Capital Real Estate Invs.,*

---

[9] Gerling's position here is exactly the behavior the *B.L. Harbert* court admonished, "[t]he only manifest disregard of the law evident in this case is Harbert's refusal to accept the law of this circuit which narrowly circumscribes judicial review of arbitration awards . . . .  A realistic threat of sanctions may discourage baseless litigation over arbitration awards and help fulfill the purposes of the pro-arbitration policy contained in the FAA.  It is an idea worth considering."  *B.L. Harbert*, 441 F.3d at 913-914.

*L.L.C. v. SDDCO Brokerage Advisors, LLC*, 355 F. Supp. 3d 188, 196 (S.D.N.Y. 2019) (*citing Sanluis Dev., L.L.C. v CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 333 (S.D.N.Y. 2008) (courts "treat a party's opposition to a motion to vacate as a request to confirm the award.")  Consistent with the burden for vacatur, "the showing required to avoid confirmation is very high." *Wells Fargo*, 373 F. Supp. 3d 418, 423 (S.D.N.Y. 2019).  "Only a barely, colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal citations and quotations omitted).

Since an arbitrator's decision is treated with deference, "[c]onfirmation of an arbitral award normally takes the form of a summary proceeding that converts a final arbitration award into a judgment of the court." *Beijing Shougang Mining Inv. Co. Ltd. v. Mongolia*, No. 17 Civ. 7436(ER), 2019 WL 624229, at * 3 (S.D.N.Y. November 25, 2019).  Additionally, although the Third PFA is "partial," it can still be confirmed.  *Ecopetrol S.A. v. Offshore Exploration and Production LLC*, 46 F. Supp.3d 327, 336 (S.D.N.Y. 2014) quoting *Metallgesellschaft A.G., v. M/V Capital Constante*, 790 F.2d 280, 283 (2d Cir. 1986) ("an award which finally and definitely disposes of a separate independent claim may be confirmed although it does not dispose of all claims that were submitted to arbitration"); *see also, Rocket Jewelry Box, Inc. v. Noble Gift Packaging*, 157 F.3d 174, 176 (2d Cir. 1998) (an award is final if it resolves the rights and obligations of the parties definitively enough to preclude the need for further adjudication with respect to the issue submitted to arbitration).

As set forth in detail in this memorandum of law, Gerling has not met its high burden for vacatur.  The Third PFA, along with Order No. 1, and the Arbitration Agreement demonstrate, on their face, that the Panel neither exceeded its authority nor acted in manifest disregard of the law. Here, the Court can see that the Panel's decision provided more than a "barely, colorable

- 24 -

justification," because it actually provided the correct one.  The Panel finally resolved the issue of insurance coverage for the three Underlying MTBE Claims before it in Phase III.  Accordingly, the Third PFA must be confirmed.

## VI.    **CONCLUSION**

For the foregoing reasons, Tosco requests that the Court deny Gerling's Petition to Vacate in its entirety, and grant Tosco's Motion for Order Confirming Arbitration Award.

Respectfully submitted,

**REED SMITH LLP**

Dated:  February 14, 2020                              s/John N. Ellison
                                                   John N. Ellison
                                                   Richard P. Lewis
                                                   599 Lexington Avenue
                                                   New York, NY 10022
                                                   T:  (212) 521-5400
                                                   F:  (212) 521-5450
                                                   jellison@reedsmith.com
                                                   rlewis@reedsmith.com

                                                   *Of Counsel:*
                                                   Shruti D. Engstrom
                                                   Three Logan Square
                                                   1717 Arch Street, Suite 3100
                                                   Philadelphia, PA 19103
                                                   T:  (215) 851-8100
                                                   F:  (215) 851-1420
                                                   sengstrom@reedsmith.com

                                                   Attorneys for Phillips 66 Company