**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HDI GLOBAL SE, f/k/a HDI-GERLING INDUSTRIE VERSICHERUNG AG,

Petitioner,

v.

PHILLIPS 66 COMPANY,

Respondent.

Civil Action No. 1:20-cv-00631 (RMB)

**COMBINED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER'S MOTION TO VACATE THE THIRD PARTIAL FINAL ARBITRATION AWARD AND MEMORANDUM IN OPPOSITION TO RESPONDENT PHILLIPS 66'S CROSS-MOTION TO CONFIRM**

CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174

*Attorneys for Petitioner*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. PFA 3 SHOULD BE VACATED. ........ 2

A. Where the arbitrators manifestly disregard a contract by nullifying a provision, vacatur is an appropriate remedy under the law of this Circuit.. ........ 2

B. Phillips 66's argument that the Exception contemplates nullification of part of the Pollution Exclusion contradicts the plain and unambiguous language of the Policy and governing New York law.. ........ 3

C. The Majority's reliance upon public policy and principles of economic efficiency to justify rewriting the Policy constitutes manifest disregard of the Policy. ........ 6

D. Gerling did not waive the right to challenge the Panel's ruling in PFA 3. ........ 8

II. PHILLIPS 66'S CROSS-MOTION TO CONFIRM SHOULD BE DENIED. ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A T & T Techs., Inc. v. Communications Workers of America*,
475 U.S. 643 (1986)....................2, 7

*Global Reinsurance Corp. v. Century Indemnity Co.*,
30 N.Y.3d 508 (2017)....................7, 8

*Raiola v. Union Bank of Switzerland*,
LLC, 230 F. Supp. 2d 355 (S.D.N.Y. 2002)....................3

*United Steelworkers v. Enterprise Wheel & Car. Corp.*,
363 U.S. 593 (1960)....................2

*Weiss v. Sallie Mae, Inc.*,
939 F.3d 105 (2d Cir. 2019)....................3

*Westerbeke Corp. v. Daihatsu Motor Co.*,
304 F.3d 200 (2d Cir. 2002)....................3

## PRELIMINARY STATEMENT

Petitioner HDI Global SE ("Gerling") respectfully submits this combined reply memorandum in further support of its petition to vacate the Third Partial Final Award ("PFA 3") and in opposition the Respondent Phillips 66 Company's ("Phillips 66") cross-motion to confirm the Third Partial Final Award. In its opposition to Gerling's motion to vacate PFA 3, Phillips 66 sidesteps directly responding to Gerling's central point: that PFA 3 nullified part of the parties' contract. Instead of directly addressing Gerling's point, Phillips 66 raises a number of ill-conceived arguments:

A. That it is "questionable" whether in this Circuit an arbitration panel's manifest disregard of a contract (even where a contract provision is nullified) is grounds for vacatur;

B. That the Product Pollution Liability Exception (the “Exception”) contemplates nullification of part of the Pollution Exclusion under certain circumstances;

C. That the Majority's reliance upon the grounds of public policy and difficulty of proof to justify nullification does not mean the arbitrators rewrote the Policy; and

D. The Majority's ruling in PFA 3 was similar to a ruling the arbitrators issued years earlier and Gerling did not object at that time and therefore waived its rights.

As demonstrated below, none of these arguments (or any others proffered in Phillips 66's papers) overcomes the fact that, by ruling that the Policy's Pollution Exclusion did not apply to the *New Jersey* and *OCWD* settlements because those settlements "released only claims based on Tosco's product liability for manufacturing MTBE gasoline traced to third parties", the arbitrators nullified that part of the Pollution Exclusion which expressly provides that it applies "whether or not such discharge of pollutants (i) results from the Insured's activities or the activities of any other person or entity." In short, the Pollution Exclusion expressly applies to exclude Phillips 66's pollution liabilities, even after Phillips 66 has relinquished control of the

MtBE gasoline. The Majority, however – based upon its own notions of public policy and economic efficiency – decided to write that part of the Pollution Exclusion out of the Policy.

The law is clear in this Circuit that an arbitrator's rewriting of a contract constitutes manifest disregard of that contract and is grounds for vacatur. As set forth below, none of Phillips 66's arguments alter this outcome and PFA 3 must therefore be vacated.

## ARGUMENT

## POINT I

## PFA 3 SHOULD BE VACATED

### A. Where the arbitrators manifestly disregard a contract by nullifying a provision, vacatur is an appropriate remedy under the law of this Circuit.

From the very first page of its opening memorandum, Gerling freely acknowledged that arbitrators are entitled to great deference in their decisions and that arbitration awards are only rarely vacated.[1] However, rare does not mean never.

As Gerling has pointed out – and as Phillips 66 has entirely ignored – the United States Supreme Court declared long ago in *United Steelworkers v. Enterprise Wheel & Car. Corp.*, 363 U.S. 593, 597 (1960), that arbitrators do not sit to dispense their "own brand of industrial justice", but are confined to the contract before them. *See also A T & T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 651 (1986) (arbitrators may not "impose obligations outside the contract."). Contrary to Phillips 66's suggestion to the contrary, it is not "questionable" whether, in this Circuit, manifest disregard of the parties' agreement is grounds for vacatur of an arbitration award. Rather, it is well-settled that manifest disregard of a contract

---

[1] Phillips 66 notes that the arbitrators include an Article III Judge and esteemed attorneys. Gerling does not deny this, but also does not consider this fact relevant to whether the Majority issued a ruling in manifest disregard of contract. Indeed, apparently one of the three esteemed arbitrators (PFA 3 does not say which) disagreed with the Majority's ruling in some respect.

is grounds to vacate an arbitration award. *See Weiss v. Sallie Mae, Inc.*, 939 F.3d 105,109 (2d Cir. 2019) (manifest disregard "encompasses situations where the arbitrator's award is in manifest disregard of the [parties'] agreement.").[2] It is in no way "questionable" as to whether manifest disregard of the parties' contract constitutes grounds to vacate an arbitration award.

Additionally, Phillips 66 does not deny (but instead ignores) the fact that the parties' agreements themselves expressly provide that no arbitration award will be deemed final and binding where "manifest error" is present.[3] Thus, as a matter of well-settled law and the parties' unambiguous agreement, PFA 3 can and should be vacated on the grounds of manifest error resulting from the Majority's disregard of the contract and the applicable law.

### B. Phillips 66's argument that the Exception contemplates nullification of part of the Pollution Exclusion contradicts the plain and unambiguous language of the Policy and governing New York law.

In an effort to explain away the Majority's nullification of part of the Pollution Exclusion, Phillips 66 advances an interpretation of the Policy that was not before the Panel and was not part of the Majority's ruling in PFA 3. The portion of the Majority's ruling in PFA 3 that is relevant to this question is as follows:

---

[2] Phillips 66 contends that the decision in *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220–21 (2d Cir. 2002) makes it "questionable" whether manifest disregard of contract language is grounds for vacatur in cases not involving a collective bargaining agreement. Phillips 66 is wrong. In *Westerbeke*, the Court of Appeals discussed, without deciding, the issue of whether manifest disregard of a non-labor contract could be grounds for vacatur of an arbitration award. The *Westerbeke* court did not rule on that issue because it held that, in any event, the facts of that case would not have merited vacatur based on manifest disregard of contract language. Since *Westerbeke* was decided, however, the Court of Appeals issued its decision in *Weiss v. Sallie Mae, Inc*., 939 F.3d 105, 109 (2d Cir. 2019), in which the court applied the manifest disregard of contract standard outside the context of a labor award.

[3] Ex. 3, ADR Agreement ¶ 17 (emphasis added). Manifest error and manifest disregard have been deemed synonymous under New York law. *See Raiola v. Union Bank of Switzerland*, LLC, 230 F. Supp. 2d 355, 358 (S.D.N.Y. 2002) (equating manifest error with manifest disregard).

> The Policy's Product Exception applies . . . to the entire settlement amount in *New Jersey*, because that settlement released only claims based on Tosco's product liability for manufacturing MTBE gasoline traced to third parties responsible for the pollution alleged.[4]

Phillips 66 does not in its memorandum address this core ruling in PFA 3, whereby the Majority declared that the Exception applied because the pollution was caused by third parties after Phillips 66 had relinquished control of the MtBE gasoline. By this ruling, PFA 3 nullified that part of the Pollution Exclusion which states that it is irrelevant that the polluting occurred after Phillips 66 relinquished control of the MtBE gasoline.

In an effort to overcome this nullification of part of the Policy, Phillips 66 argues that – whenever the liability arises out of the "end-use" of the MtBE gasoline – then the Exception itself nullifies the requirement that "Exclusion (k) applies whether or not such discharge of pollutants: (1) results from the Insured's activities or the activities of any other person or entity."

But the construction presented by Phillips 66 in its memorandum in opposition is expressly contradicted by what the Panel ruled in Order No. 1. In its own papers (at page 10), Phillips 66 argues that the Panel years ago ruled in Order No. 1 that for the Exception to apply, there were several independent conditions, including (1) that the liability had to include injury or damage "arising out of the end-use" of Tosco's goods and products; (2) the use had to occur "after possession of such good or products has been relinquished to others" by Tosco; and (3) the use had to occur "away from premises owned, rented or controlled" by Tosco.[5] As Phillips 66 concedes, the Panel understood that the condition that the liability had to include injury or damage "arising out of end-use" was separate and distinct from the condition that the use had to occur "after possession of such goods or products has been relinquished" by Phillips 66. PFA 3

---

[4] Ex. 1, ¶82. The Majority applied the same reasoning to the *OCWD* claim.
[5] Ex. 5, Order No. 1 at 30-31, as quoted in Phillips 66 memorandum at 10.

constitutes manifest error because it equates these two separate and distinct conditions, thus nullifying part of the Policy. Under PFA 3, the Panel equated relinquishment of control of Phillips 66's MtBE gasoline to a third party with the "end use" of that MtBE gasoline. But the language of the Policy makes plain that these are separate conditions, neither to be nullified by the other.

If this were merely a matter of contract interpretation, vacatur would not be available. But it is more than a dispute about contract interpretation. The fundamental flaw with PFA 3 is not merely that it misinterprets the Gerling policy, but it does so in a way that renders policy language meaningless. Simply stated, if the Policy operated the way that the Majority ruled, then the language in the Pollution Exclusion which excluded coverage for discharges by third parties could never have any application under any circumstances, because – according to the Majority – the moment that Phillips 66 relinquishes control over its product to a third party, the Exception for product pollution liability would come into play and overwrite the Exclusion. Tellingly, Phillips 66's briefs do not (because they cannot) suggest any scenario where the third party polluter language would apply, but where the Exception would not. But if the Exception comes into play whenever Phillips 66 relinquishes control over its product to a third party, then the third party polluter language is rendered meaningless.

PFA 3 thus makes the language in the Pollution Exclusion concerning third party discharges mere surplusage because under the Majority's Award, the Pollution Exclusion would operate the same way regardless of whether it included the language concerning discharges by third parties. This violates fundamental rules of contract interpretation and constitutes manifest disregard of the governing contract and manifest disregard of governing New York law, which

requires that every provision in a contract be given meaning and constructions which nullify contract provisions are to be avoided.[6]

Moreover, this is not a case where the contract itself is internally contradictory, necessitating an interpretation that does not give meaning to one term in favor of another. Both the third party discharge language and the Product Pollution Liability Exception can be given meaning when "end use" is not construed so broadly as to constitute any relinquishment of control, but rather by limiting the phrase "arising out of the end use of the product" to situations where an actual "end user" (as opposed to a wholesaler, distributer or retailer) is involved with the product, *i.e.*, spills occurring while the end user is dispensing the MTBE gasoline into its vehicle, or damaging exhaust occurring when the MTBE gasoline is combusted in the end user's engine. Under fundamental rules of contract interpretation, an interpretation that renders contract language surplusage must be rejected in favor of an interpretation that gives meaning to the entire contract. As explained in the next section, the Majority's decision to make meaningless the third party polluter language was based on its own notions of public policy and economic efficiency.

**C. The Majority's reliance upon public policy and principles of economic efficiency to justify rewriting the Policy constitutes manifest disregard of the Policy.**

Gerling calls the Court's attention to paragraph 82 of PFA 3, which demonstrates beyond doubt that the Majority decided to rewrite the Policy on grounds of public policy and economic efficiency.

[6] *See* Gerling's Moving Brief at 16-17.

Specifically, the Majority stated that its ruling in PFA 3 which applied the Exception once Phillips 66 relinquishes the MtBE gasoline is "consistent with New York's Policy of encouraging polluters to exercise care in commercial activities having a potential to cause pollution," under which policy the Pollution Exclusion should only bar coverage for "forms of liability that are within the control of the manufacturer to control."[7] In the Majority's view, public policy requires that insurance coverage only be excluded where it was the insured that did the polluting. But that is not what the Policy says. The Policy says that Phillips 66's coverage for pollution liability is excluded "whether or not such discharge of pollutants: (i) results from the Insured's activities or the activities of any other person or entity." As the New York Court of Appeals noted in *Global Reinsurance Corp. v. Century Indemnity Co.,* 30 N.Y.3d 508, 518 (2017), "rather than adopting a blanket rule based on policy concerns, the court must look to the language of the policy above all else." The same principle applies to arbitrators, who may not rewrite the parties' contracts. *A T & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 651 (1986) (arbitrators may not "impose obligations outside the contract.").

In addition to public policy grounds, the Majority also supported its nullification of part of the Pollution Exclusion on the ground of economic efficiency. The Majority expressly recognized the fact that, for Phillips 66 to take advantage of the Exception, it would have the burden of proving that the pollution caused by third parties was during the "end-use" of that MtBE gasoline. But the Majority declined to hold Phillips 66 to the bargain it struck on grounds of economic efficiency: "It is wholly impractical, moreover, to require a refiner [such as Phillips

[7] *Id.* While this discussion in PFA 3 dealt explicitly with Respondent's liability in the *New Jersey* matter, the Panel subsequently applied these holdings in concluding that the Exception applied to all but $160,000 of Respondent's liability in the *Orange County Water District* action. Ex. 1 ¶ 84.

66] to prove an end use that occurs out of its control and off its property."[8] Wholly impractical or not, that is what the Policy expressly required. There can be no way to read this statement by the Majority other than to conclude that the Majority determined, on grounds of economic efficiency, to nullify the Pollution Exclusion any time the pollution was caused by third persons, despite the fact that the Policy says that Phillips 66's coverage for pollution liability is excluded "whether or not such discharge of pollutants: (i) results from the Insured's activities or the activities of any other person or entity." Arbitrators may not, however rewrite the parties' contracts in order to make a new bargain which makes more sense to them. *See Glob. Reins.*, 30 N.Y. 3d at 519 ("Courts are not permitted to disregard the precise terminology that the parties used and assume, based on their own familiar notions of economic efficiency, that any clause bearing the generic marker of a 'limitation on liability' or 'reinsurance accepted' clause was intended to be cost-inclusive").

## D. Gerling did not waive the right to challenge the Panel's ruling in PFA 3.

Although Phillips 66 does not expressly argue waiver, Phillips 66 does argue that Gerling never challenged the arbitrators' first ruling as respects the Pollution Exclusion, contained in what was called "Order No. 1". Phillips 66 goes so far as to declare Order No. 1 the "lodestar principle" governing the subsequent phases of the arbitration, but does not point to any place where the Majority in PFA 3 cited Order No. 1. As Gerling noted in its opening memorandum, the arbitrators unanimously declared in Order No. 1 that "[Gerling] correctly argues that the [Exception] cannot be read so broadly as to encompass all liabilities covered by the pollution

[8] Ex. 1, ¶ 82.

exclusion. It is fair to say that [Phillips 66's] reading comes close to doing just that."[9] After briefing by both parties, the Panel denied Phillips 66's motion with respect to the Pollution Exclusion, but deferred until after discovery was complete the question of what Phillips 66 needed to prove in order to establish the applicability of the Exception.[10] Thus, Order No. 1 was not a final ruling, but was – in the Panel's own words – merely "guidance." Order No. 1 had no precedential effect in the arbitration whatsoever, as even the Panel took note. For this reason, any suggestion by Phillips 66 that Gerling waived its right to move to vacate PFA 3 on the ground of manifest error must be rejected.

Moreover, the ruling in Order No. 1 set forth as the standard for application of the Exception that Phillips 66 must establish three things: "(1) the liability must take the form of injuries and damage 'arising out of the end-use' of Tosco's goods or products; (2) such use must occur 'after possession of such goods or products has been relinquished to others by the Insured' or other trading in its name', and (3) such use must occur 'away from premises owned, rented or controlled by the Insured."[11] Gerling neither objected to nor needed to seek to vacate Order No. 1 because that ruling accurately described the three separate criteria that Phillips 66 needed to establish in later phases of the Arbitration in order to successfully apply the Exception to the Pollution Exclusion. PFA3, however, contradicted Order No. 1 by conflating the "end-use" requirement with the separate and distinct "relinquishment-to-third-parties" requirement – and

---

[9] *Id.* at 32.

[10] *See* Order No. 1 at 10 ("the Tribunal has decided at this time to deny all the summary judgment motions without prejudice to their renewal after discovery is complete, but to provide as much guidance as possible at this early stage in the proceeding"); Order No. 1 at 31 ("The Parties dispute the meaning of each of the three requirements expressed in the 'Product Liability' definition, and the Tribunal provides such guidance on those terms as it considers possible at this time"); Order No 1 at 33 (noting that the Panel's Order was "subject to the specific evidence in this matter").

[11] *See* Order at 30-31.

the Majority's stated basis for doing so is (i) its view that the purpose of a pollution exclusion is to control the conduct of the insured and not third parties, and (ii) that it would be difficult for Phillips 66 to establish the facts necessary to prove the end-use requirement.

**POINT II**

**PHILLIPS 66'S CROSS-MOTION TO CONFIRM SHOULD BE DENIED.**

In moving to confirm PFA 3, Phillips 66 relies exclusively on the proposition that confirmation of an arbitral award is required whenever vacatur is denied.[12] Thus, the sole issue for the Court's consideration on Phillips 66's cross-motion is whether Gerling has met its burden of establishing that vacatur of PFA 3 is warranted.

As set forth in detail in Gerling's moving brief and above, Gerling contends that it has met its burden of establishing that PFA 3 must be vacated as a result of the Panel's manifest disregard of the parties' contract and manifest disregard of the law. For these reasons, Phillips 66's cross-motion to confirm must be denied.

**CONCLUSION**

For all the reasons set forth above and in Gerling's initial brief, Gerling respectfully requests that the Panel grant its motion to vacate PFA 3 and deny Phillips 66's cross-motion to confirm PFA 3.

[12] *See* Phillips 66's Opposition Brief at 23-24 (citing, *inter alia*, *First Capital Real Estate Investments, L.L.C. v. SDDCO Brokerage Advisors, LLC,* 355 F. Supp. 3d 188, 196 (S.D.N.Y. 2019)).

Dated: New York, New York
February 24, 2020

Respectfully submitted,

CLYDE & CO US LLP

By:______________________

Michael A. Knoerzer
Thomas Carruthers
Alex Bein
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
T: (212) 710-3900
F: (212) 710-3950
Michael.Knoerzer@clydeco.us

*Attorneys for Petitioner*