UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HDI GLOBAL SE, f/k/a HDI-GERLING INDUSTRIE VERSICHERUNG AG,<br><br>Petitioner,<br><br>- against -<br><br>PHILLIPS 66 COMPANY,<br><br>Respondent. | 20 Civ. 631 (RMB) (GWG)<br><br>**DECISION & ORDER** |

Having reviewed the record herein, including without limitation: **(1)** HDI Global SE, f/k/a HDI-Gerling Industrie Versicherung AG ("HDI") Petition to Vacate Arbitration Award, dated January 22, 2020 ("Petition"); **(2)** HDI's Memorandum of Law in Support of its Petition ("Pet. Memo."); **(3)** Phillips 66 Company ("Phillips 66") Memorandum of Law in Support of Cross-Motion for Order Confirming Arbitration Award, dated February 14, 2020; **(4)** HDI's Reply Memorandum of Law in Further Support of its Petition to Vacate and opposition to Phillips 66's Cross-Motion to Confirm ("Pet. Reply"); and **(5)** the transcript of the oral argument held on February 26, 2020 ("Feb. 26, 2020 Tr."), **the Court hereby denies the Petition to vacate and grants the Cross-Motion to confirm the Award as follows**:

I. Background

On January 25, 2013, Tosco Corporation ("Tosco"), a refiner of gasoline and seller of other petroleum products, commenced arbitration against HDI, a German insurance company, claiming that it was improperly denied coverage for claims under an insurance policy issued by HDI ("Policy"), for coverage between August 1, 1998 and July 31, 1999 ("Coverage Period"). See Pet. at 2, 5-6. During the Coverage Period, Tosco faced several nationwide lawsuits alleging

1

that it "caused damage to groundwater by allowing an additive to their gasoline, [MtBE], to leak into the local groundwater." Id. at 4. Tosco claimed that it was entitled to coverage under the Policy for the liabilities incurred in settling these lawsuits. Id. at 5-8. Tosco was purchased by Phillips Petroleum Company in 2001 and is controlled by Phillips 66. Id. at 2. Tosco, Phillips Petroleum Company and Phillips 66 are collectively referred to herein as "Respondent."

The arbitration was conducted pursuant to a Confidential Agreement for Alternative Dispute Resolution of MtBE Claims, dated November 8, 2011 ("Arbitration Agreement"). Id. at 5-6. The arbitral panel of three arbitrators included retired Southern District of New York Judge Abraham D. Sofaer and two attorneys with over thirty-five (35) years of experience in complex insurance coverage matters. See Cross-Motion at 1. The Panel issued three (separate) awards in the arbitration, each award corresponding to MtBE-related lawsuits. See Pet. at 7-8. HDI seeks vacatur of the Third Partial Final Award ("Award") which addressed Respondent's claims brought by the State of New Jersey and the Orange County Water District ("New Jersey and Orange County Claims"). See Pet. Memo. at 10-12.

HDI argued in the arbitration that the liabilities incurred in connection with the New Jersey and Orange County Claims were excluded from coverage under the Policy's so-called "Pollution Exclusion," See Cross-Motion at 9; Knoerzer Decl. Exhibit 1 ("Award") at 57, which excludes from coverage liability from the discharge of pollutants "whether or not such discharge of pollutants results from [Tosco's] activities or the activities of any other person or entity." See Pet. at 3; Cross-Motion at 5. HDI argued that because the New Jersey and Orange County Claims concerned Tosco's liability for pollution caused by third parties, they were excluded as "the activities of any other person or entity." See Award at 57-58. Respondent countered that the New Jersey and Orange County Claims were covered because of the "Product Pollution Liability Exception" to the Pollution Exclusion. Id. at 58-59; Pet. at 7. The Arbitration Agreement

specifically directed the Panel to determine the extent to which the Pollution Exclusion applied to Respondent's claims. See Knoerzer Declaration Exhibit 3 at 6; Pet. at 6; Cross-Motion at 8.

On June 11, 2013, the Panel issued an order ("2013 Order") concluding that the Product Pollution Liability Exception "should be interpreted in light of the definition of 'Product Liability' found in the Policy's Article III(n)," which requires Respondent to satisfy three requirements to establish that its claims fall within the Product Pollution Liability Exception: "(1) the liability must take the form of injuries and damage 'arising out of the end-use' of Tosco's goods or products; (2) such use must occur 'after possession of such goods or products has been relinquished to others by the Insured' or others trading 'in its name'; and (3) such use must occur 'away from the premises owned, rented or controlled by the Insured.'" See Knoerzer Declaration Exhibit 5 ("2013 Order") at 30-31; Award at 57.

And, on October 27, 2019, the Panel issued the challenged Award in favor of Respondent, finding that the New Jersey and Orange County Claims satisfied the Product Pollution Liability Exception's requirements and were "entitled to coverage under the Policy." See Award at 59-60, 67.

## II. Legal Standard

Under the Federal Arbitration Act ("FAA"), "courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 598 (2013). "If the parties agreed to submit an issue for arbitration, we will uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (quotation omitted). "On application for an order confirming the arbitration award, the court must grant the order unless the award is vacated, modified, or corrected as prescribed in [the FAA]." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (quotation omitted).

### III.     Analysis

HDI argues that the Award should be vacated because it "exceeded the authority of the arbitrators in violation of [FAA] 9 U.S.C. § 10(a)(4)" and "the Panel manifestly disregarded the binding terms of the parties' contract." See Pet. at 1, 11. HDI contends that, by construing the Product Pollution Liability Exception "so broadly," the Panel effectively determined that "the Exception comes into play whenever [Respondent] relinquishes control over its product to a third party," thus rendering the Pollution Exclusion "meaningless." See Pet. Reply at 5-6. HDI claims that the Award was based upon the Panel's "own view of public policy and notions of economic efficiency." See Pet. at 10. Phillips 66 counters persuasively that "the Panel did not exceed its authority . . . because the parties' arbitration agreement authorized the Panel to determine the applicability of the Pollution Exclusion." See Cross-Motion at 3-4. HDI, accordingly, "demonstrates no more than disagreement with the Panel's interpretation of an insurance contract." Id. at 1.

FAA § 10(a)(4) allows for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." See 9 U.S.C. § 10(a)(4). A court's "limited inquiry under § 10(a)(4) focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 346 (2d Cir. 2010) (quotation omitted). "Vacatur is only warranted when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (quotation omitted). An award, such as the Award here, will not be vacated "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Bhd. of Carpenters & Joiners*

4

*of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015) (quotation omitted).

HDI clearly fails to demonstrate that the Panel exceeded its authority under FAA 9 U.S.C. § 10(a)(4) and manifestly disregarded the terms of the Policy. **First**, the Arbitration Agreement specifically instructed the Panel to interpret the terms of the Policy and to determine "whether and to what extent Respondent's losses were excluded by the Pollution Exclusion or restored by the [Product Pollution Liability Exception]." See Pet. at 6; Cross-Motion at 8. The parties submitted briefs to the Panel addressing the meaning and applicability of the Pollution Exclusion and the Product Pollution Liability Exception. Id. at 6-7. The Panel clearly did not exceed its authority because it was doing exactly what the parties authorized and directed it to do. *See KT Corp. v. ABS Holdings, Ltd.*, 2018 WL 3435405, at *4 (S.D.N.Y. July 12, 2018), *aff'd*, 784 F. App'x 21 (2d Cir. 2019) ("the Panel did not exceed its authority because the basis for its holding was one of 'construing [and] applying the contract,' which was within the scope of the arbitration provisions in the parties' agreements"); *C&D Techs., Inc. v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, 303 F.Supp.2d 468, 469 (S.D.N.Y. 2004) ("It is clear to this Court that the arbitrator did not exceed her powers . . . [s]he interpreted the relevant provision of the [contract], as the parties asked her to"). HDI simply disagrees with the Panel's interpretation of the exception in favor of Phillips 66. See Pet. Reply at 5-6. Mere disagreement is not grounds for vacatur under § 10(a)(4). *See DigiTelCom, Ltd. v. Tele2 Sverige AB*, 2012 WL 3065345, at *3 (S.D.N.Y. July 25, 2012) ("Plaintiffs' challenge to the Award amounts to little more than an assault on the Tribunal's factfinding and contractual interpretation rather than on its authority . . . [t]hus to the extent that Plaintiffs' argument even constitutes a proper challenge pursuant to § 10(a)(4), it must fail.").

**Second**, the Panel specifically incorporated into the Award its 2013 Order which: (1) interpreted the term "product pollution liability" to include "Product Liability." See Award at 3-

59-60; 2013 Order at 30-31; and (2) interpreted "the meaning of each of the three requirements expressed in the 'Product Liability' definition." See 2013 Order at 30-32. The Panel concluded that having "already determined the meaning of the exception for product pollution liability in its [2013] Order . . ., the exception's requirements are met" in the New Jersey and Orange County Claims. Award at 59. The text of the Policy served as the basis for the Award and the Panel clearly did not disregard the Policy's terms. *See Wells Fargo Advisors LLC v. Tucker*, 373 F.Supp.3d 418, 428 (S.D.N.Y. 2019) (denying vacatur based on manifest disregard of contract where the arbitrator "conclu[ded] that the text – the four corners of the Agreement – was dispositive . . . as the source of her substantive ruling"); *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 32-33 (S.D.N.Y. 2017) ("**The Court easily concludes that the Arbitrator was construing and applying the contracts . . . From the face of the Final Award, it is evident that the Arbitrator examined the [] Provision . . . [T]he Court cannot find that this analysis comes close to a manifest disregard on the part of the Arbitrator of the contracts at issue.**") (emphasis added). Moreover, the Court agrees with Phillips 66 that any reference to public policy and economic efficiency only served as "additional support" for the Panel's decision based on the terms of the Policy. See Cross-Motion at 4. In fact, the Panel stated as much in both its 2013 Order and the Award: "The Panel regards this [policy] purpose . . . as lending further support to relying on the definition [of 'Product Liability'] in ascertaining the meaning of 'Product Pollution Liability.'" See 2013 Order at 30-31; see also *Wells Fargo*, 373 F. Supp. 3d at 428.

**Third**, the Panel demonstrated that its application of the Product Pollution Liability Exception in the Award did not render the Pollution Exclusion "meaningless." See Award at 59-60. The Panel explained that the Product Pollution Liability Exception only grants coverage for those forms of pollution that satisfy the exception's three requirements. Id.; see also 2013 Order

at 32-33; Cross-Motion at 3-4, 18-19. "Whether the Panel's interpretation of the Contract or [Petitioner's] interpretation of it is correct is immaterial - Courts do not have the power to review the merits of arbitrators' contract interpretations." *See Sevenson Envtl. Servs., Inc. v. Sapp Battery Site Grp.*, 2004 WL 936764, at *4 (S.D.N.Y. Apr. 29, 2004).

In sum, the Award was based on the Panel's reasonable interpretation and application of the terms of the Policy. There is no support for the claim that the Panel "decided to ignore" or "pay no attention" to New York law or that there was any "egregious impropriety on the part of the arbitrators." See Cross-Motion at 16-17. Accordingly, vacatur of the Award is denied.[1]

## IV.     Conclusion & Order

HDI's Petition to vacate the Award (Dck. # 1) is denied and Phillips 66's Cross-Motion to confirm the Award (Dck. # 18) is granted. The Clerk of the Court is respectfully requested to close this case.


Dated: New York, New York
       May 12, 2020

_____
          **RICHARD M. BERMAN**
               **U.S.D.J.**

---

[1] Any issues or arguments not specifically addressed in this decision and order have been considered by the Court and rejected.